**In the Matter of the Motor Carrier Application of Doyle HARMS, Redfield, South Dakota.**

**No. 17750.**

Supreme Court of South Dakota.

Argued April 20, 1992.

Decided Nov. 4, 1992.

H.I. King of Tonner, Tobin & King, Aberdeen, for appellant Doyle Harms.

Ronald G. Schmidt of Schmidt, Schroyer, Colwill & Moreno, Pierre, for appellees Feldhaus, et al.

TIMM, Circuit Judge.

Doyle Harms (Harms) appeals from a circuit court judgment reversing the Public Utilities Commission's (PUC) decision to grant him a Class B motor carrier permit. We affirm.

Harms is a bonded order buyer of cattle and an operator of a feedlot in Redfield, South Dakota. His equipment is two trucks, two livestock trailers and one grain hopper bottom. He employs two full-time drivers and two part-time drivers.

On July 12, 1990, Harms submitted an application for Class B authority to transport:

(1) Livestock from the Livestock Sales Barns at Redfield, Mitchell, Aberdeen, Britton, Huron, Herreid and Fort Pierre, to any point in the state; (2) Grain, between Redfield and any point in the state.

Following a contested case hearing the PUC concluded that the transportation to be authorized by the permit was consistent with the public convenience and necessity and granted the Class B permits.

The PUC's findings of fact state in relevant part:

Applicant does not intend to haul for everyone who requests transportation within his authority. Applicant will primarily haul cattle he has purchased, cattle he has purchased for others, and partial loads which he does not own or has not purchased.

This finding is drawn from Harms' testimony. Asked if it was his intention to haul in a different direction than he was already going, Harms stated:

No way, that's not what I'm asking for. I've got enough business of my own, it's just the times when you get done with a sale at the end of the day and you've got a half load and somebody else has a half a load, then you'd be able to help each other out. It's kind of the name of the game in my mind.

He also testified that the application was so he could haul cattle for his own customers.

There is no dispute over the foregoing facts. The issue here is whether the PUC exceeded its statutory authority in granting a Class B permit to Harms given the nature of the proposed service. This issue was addressed in the companion case of *In the Matter of the Motor Carrier Application of JanCo, Inc.* (# 17726, 17731, conference opinion filed 11/4/92) 491 N.W.2d 757 where we determined that this is a question of law for this court to decide, unfettered by deference to either the circuit court or the PUC. SDCL 1–26–37; SDCL 1–26–36; *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987); *Appeal of Templeton*, 403 N.W.2d 398 (S.D.1987); *State ex. rel. Utilities Com'n. v. Tar Heel*, 77 N.C.App. 75, 334 S.E.2d 396 (1985).

With certain exceptions (*see* SDCL 49–28–2), any person or entity that desires to engage in intrastate transportation of persons or property, for hire, must apply for authorization from the PUC. SDCL 49–28–8.1, SDCL 49–28–9.1. The PUC may authorize one of two types of operation: (1) it may grant a permit (Class A or Class B) authorizing performance as a common carrier; or, (2) it may register an applicant (Class C) authorizing it to operate as a contract carrier.

It is clear from certain provisions of SDCL 49–28 that common and contract carriers are distinct types of carriers and that a carrier cannot be both. *See also, State ex rel. Utilities Comm. v. Tar Heel, supra.* SDCL 49–28–1(15) defines a common carrier as "a motor carrier which holds itself out to the general public as engaged in the business of transporting persons or property in intrastate commerce which it is accustomed to and is capable of transporting from place to place in this state, for hire." Its property is "devoted to the public service." SDCL 49–28–9.1(2)(e). It may not "make or give any preference or advantage to any person, company, partnership, corporation or locality, or any description of traffic nor subject any person, company, partnership, corporation or locality, or any description of traffic, to any prejudice or disadvantage." SDCL 49–28–30. In contrast, a contract carrier "does not engage in or hold itself out to furnish service to the

general public." SDCL 49–28–4.1. Its property is not devoted to the public service. SDCL 49–28–9.1(3). It is not prohibited from granting preference or advantage. SDCL 49–28–30.

Based on these statutes it is obvious that the service Harms proposed falls outside the realm of common carriage. Harms' dedication of his equipment to first serve his own needs and those of his customers is in contravention of a common carrier's duty to devote itself to public service without discrimination. Failure to recognize this led the PUC to issue a common carrier permit to a motor carrier that is not a common carrier. There is no statutory authority to do so. We therefore agree with the circuit court that the PUC exceeded its statutory authority in granting the Class B permit to Harms.

Affirmed.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.

TIMM, Circuit Judge, for WUEST, J., disqualified.