**In the Matter of the Motor Carrier Applications of JANCO, INC., Sioux Falls, South Dakota, 23752–B, 23753–B, 23754–B, 23755–B, and 23756–B.**

**Nos. 17726, 17731.**

Supreme Court of South Dakota.

Argued April 20, 1992.

Decided Nov. 4, 1992.

Rehearing Denied Dec. 10, 1992.

Mark Barnett, Atty. Gen., Rolayne Ailts and Doug Eidahl, Asst. Attys. Gen., Pierre, for appellants Public Utilities Com'n.

Jeremiah D. Murphy and Michael McKnight of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellant JanCo, Inc.

Ronald G. Schmidt of Schmidt, Schroyer, Colwill & Moreno, Pierre, for appellees Feldhaus, et al.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, for appellees Sargent Trucking & Sheehan Trucking.

TIMM, Circuit Judge.

Janco, Inc. (JanCo) and the Public Utilities Commission (PUC) appeal from a circuit court judgment reversing the PUC's decision to grant five Class B motor carrier permits to JanCo. We affirm.

Wally and Tony Jansma, the shareholders of JanCo, buy, sell, and feed cattle for themselves and others through several business entities: J & L Livestock (owned by Wally); Wally Jansma, Inc., (owned by Wally); Jansma Cattle Company (owned by Tony); and Mid–Plains Feeders (owned by Tony). JanCo, a South Dakota Corporation located in Sioux Falls, was formed by the Jansmas for the purpose of hauling their

own cattle. It is equipped with twenty trailers. Cabs are leased to pull them.

In August 1990, JanCo applied to the PUC for Class B authority to transport:

Livestock, between any points in Perkins, Corson, Campbell, Edmunds, Walworth, Spink, Faulk, Potter, McPherson, and Brown Counties and any point in the state.

Livestock, between any point in Jerauld, Beadle, Kingsbury, Brookings, Day, Hamlin, Roberts, Marshall, Deuel, Codington and Clark Counties and any point in the state.

Livestock, between any point in Hyde, Hand, Stanley, Hughes, Lyman, Sully and Haakon Counties and any point in the state.

Livestock, between any point in Yankton, Lincoln, Turner, Davison, Minnehaha, Hanson and McCook Counties and any point in the state.

Livestock, between any point in Butte, Meade, Lawrence, Pennington, Fall River and Custer Counties and any point in the state.

Following a contested case hearing on the applications the PUC concluded that the transportation to be authorized by the permits was consistent with the public convenience and necessity and granted the Class B permits.

Certain facts * found by the PUC in support of its decision are relevant. Finding of fact two states in part:

Applicant desires to haul for Jansma-related companies and partial loads for other cattle shippers when they have equipment available. The partial loads transported for other shippers will usually be for persons whom Jansma has purchased cattle. When partial loads are transported by Jansma, often all portions of the load will be transported to the same feedlot or location, or locations which are along the same route.

Finding of fact three states in part:

Applicant does not intend to haul for everyone who requests transportation within his authority. He intends to haul cattle for Jansma-related companies, backhauls and partial loads for others.

There is no dispute over the foregoing facts. The issue here is whether the PUC exceeded its statutory authority in granting Class B permits to JanCo given the nature of the proposed service. This is a question of law for this court to decide, unfettered by deference to either the circuit court or the PUC. SDCL 1–26–37; SDCL 1–26–36; *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D. 1987); *Appeal of Templeton*, 403 N.W.2d 398 (S.D.1987); *State ex rel. Utilities*

* The facts come from the testimony of Wally Jansma, President of JanCo:

JanCo's Attorney: We've heard some testimony that you wouldn't be able to service the entire (unintelligible) with your 20 trailers for the local people that want to send some pasture cattle in. Do you agree with that?
Wally: Oh, absolutely. There's no doubt.
JanCo's Attorney: It's true. What is it then exactly that you want and why do you want this Class B permit? In addition to hauling your own cattle, what do you want to do?
Wally: That's number one priority. Number two, if per se we're getting a bunch of our cattle, and everybody knows on a country deal, you can end up short, or whatever, there we are, we've got an extra truck. I'd really like to be able to load it back to somewhere, (sic) which I'm sure everybody can appreciate.

\* \* \* \* \* \*

JanCo's Attorney: Which would allow you the flexibility to fill your trucks going one way or the other.
Wally: To do the partial loads, to do the little things that make it work for our own office.

\* \* \* \* \* \*

JanCo's Attorney: Tell her what you propose.
Wally: What we propose, is that, we should, you know, the reason for the permit basically is to haul our own cattle. There is an odd occasion we would like the flexibility to haul you know a little bit for someone else. Let's say we get supposedly there's ten loads up there and we get there, there's only nine. To be able to load that truck back for somebody else. Or if there's a partial load, what we propose is limiting our outside revenues to 10%.

*Com'n. v. Tar Heel,* 77 N.C.App. 75, 334 S.E.2d 396 (1985).

With certain exceptions (*see* SDCL 49-28-2), any person or entity that desires to engage in intrastate transportation of persons or property, for hire, must apply for authorization from the PUC. SDCL 49-28-8.1, SDCL 49-28-9.1. The PUC may authorize one of two types of operation: (1) it may grant a permit (Class A or Class B) authorizing performance as a common carrier; or, (2) it may register an applicant (Class C) authorizing it to operate as a contract carrier.

It is clear from certain provisions of SDCL 49-28 that common and contract carriers are distinct types of carriers and that a carrier cannot be both. *See also, State ex rel. Utilities Comm. v. Tar Heel, supra.* A common carrier is defined as "a motor carrier which holds itself out to the general public as engaged in the business of transporting persons or property in intrastate commerce which it is accustomed to and is capable of transporting from place to place in this state, for hire." SDCL 49-28-1(15). Its property is "devoted to the public service." SDCL 49-28-9.1(2)(e). It may not "make or give any preference or advantage to any person, company, partnership, corporation or locality, or any description of traffic nor subject any person, company, partnership, corporation or locality, or any description of traffic, to any prejudice or disadvantage." SDCL 49-28-30. In contrast, a contract carrier "does not engage in or hold itself out to furnish service to the general public." SDCL 49-28-4.1. Its property is not devoted to the public service. SDCL 49-28-9.1(3). It is not prohibited from granting preference or advantage. SDCL 49-28-30.

Based on these statutes it is obvious that the service proposed by JanCo falls outside the realm of common carriage. JanCo's dedication of its equipment to first serve the needs of the Jansmas and their customers is in contravention of a common carrier's duty to devote itself to public service without discrimination. Failure to recognize this led the PUC to issue common carrier permits to an entity that is not a common carrier. There is no statutory authority to do so. We therefore agree with the circuit court that the PUC exceeded its statutory authority in granting the Class B permits to JanCo.

Affirmed.

MILLER, C.J., concurs.

SABERS, and AMUNDSON, JJ., concur in part and dissent in part.

HENDERSON, J., dissents.

TIMM, Circuit Judge, for WUEST, J., disqualified.

AMUNDSON, Justice (concurring in part and dissenting in part).

The trial court in Finding of Fact 18 adopted and incorporated the findings of the Administrative Law Judge (ALJ) assigned to hearing the matter by the PUC. These findings specifically state that Janco had carried its burden in showing public convenience and necessity for serving entities owned by Janco shareholders and their related companies. The trial court did not address this portion of the ALJ decision. The decision of the PUC did not differentiate between granting the permits for service to the general public and granting permits for service to these other entities. I would therefore remand this aspect of the case back to the trial court for a ruling on the specific finding, since to leave it unanswered seems inconsistent to this writer.

The ALJ proposed decision and order submitted to the PUC found from the evidence: (1) the granting of the requested permits would adversely affect existing service; (2) present services provided by permit holders was adequate; and (3) Janco would not base drivers or equipment in the areas applied for to meet the day-to-day needs of the public. The PUC, when ruling on the application, did not address these findings so that the record is void of any rationale on the part of the PUC as to why these findings of their ALJ were in error. Such findings from the hearing officer certainly lead to only one conclusion; namely, the granting of these permits would not be inconsistent with public necessity. *Mid-*

west Motor Express, Inc., Bismarck v. South Dakota Pub. Utils. Comm'n, 431 N.W.2d 160 (S.D.1988). The record in this case certainly does not disclose a clearly erroneous decision having been made by the trial court on the statewide permits being requested by Janco. *Conrad v. City of Rapid City*, 391 N.W.2d 682 (S.D.1986). I, therefore, concur in the majority's holding on the issuance of the permits by the PUC. As stated above, the evidence would sustain the issuance of the permits for the carriers of Janco's or its controlled entities' livestock.

I am authorized to state that Justice SABERS joins in this concurrence in part and dissent in part.

HENDERSON, Justice (dissenting).

I would reverse the circuit court and uphold the Public Utilities Commission. Therefore, I dissent.

We have before us a classic illustration of a circuit judge *not* giving deference to the Commission's factual findings. Deference must be given under our holding in *Matter of Midwest Motor Exp., Inc., Bismarck*, 431 N.W.2d 160 (S.D.1988). Janco met its burden of proof on the factual issue of public convenience and necessity. The circuit court is required by state statute to give great weight to the PUC's factual findings. It failed to do so. SDCL 1–26–36.

The trial court's words truly reflect its errant "scope of review" approach:

> The court finds that the record more closely supports the proposed findings of the Administrative Law Judge than it does the decision of the Commission.

The test is not if the record "more closely supports" the proposed decision of the Administrative Law Judge. Rather, the test is if there is substantial evidence in the record to support the Commission's decision. *Midwest Motor Exp., supra.* There was *substantial evidence* to support the issuance of these permits. *See, Schlenker*

v. *Boyd's Drug Mart*, 458 N.W.2d 368, 371 (S.D.1990).