**Raymond AMYOT, Appellant,**

v.

**Robin LUCHINI and Sharon Luchini, Appellees.**

No. S–7170.

Supreme Court of Alaska.

Feb. 14, 1997.

Kenneth D. Lougee and John Tiemessen, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for Appellant.

Michael A. Brain, Law Offices of Royce & Brain, Anchorage, for Appellees.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

COMPTON, Chief Justice.

## I. INTRODUCTION

The superior court held that a state statute requiring good faith disclosure of defects in residential real property transfers precludes a buyer from recovering from a seller under the theory of innocent misrepresentation. We affirm.

## II. FACTS AND PROCEEDINGS

Robin Luchini and Sharon Luchini owned a house on Penrose Lane in Fairbanks. In preparation for the sale of the house, the Luchinis hired Kenneth Rydberg, a professional engineer, to inspect it. In an August 1993 letter, Rydberg opined that "the foundation is stable and the floor framing is satisfactory." He further asserted that "[w]ith continued normal maintenance, the building should easily have a remaining useful life of over 35 years."

Raymond Amyot and Shari Luster were interested in purchasing a home in which they could install a swimming pool. They visited the Luchinis' house in August 1993, found that it would accommodate an indoor pool, and shortly thereafter began negotiating to purchase the house.

During the negotiation period, the Luchinis gave Amyot a copy of Rydberg's letter. Mr. Luchini completed and gave to Amyot a "Residential Real Property Transfer Disclosure Statement." In this disclosure statement Mr. Luchini indicated that, to the best of his knowledge, there were no defects in the walls or foundation of the house. The Luchinis also gave Amyot a "Property Information Profile" which they had completed for the real estate listing service. In it they stated that the foundation was in "good" condition. Amyot knew that the foundation

was constructed of all-weather wood. The Luchinis also had informed him that sometime previously the fireplace had fallen through the floor and into the basement.[1]

In October Amyot and the Luchinis entered into an earnest money receipt and purchase agreement; the purchase price was $181,500. In December the parties closed the sale.

While preparing the basement for installation of the pool, Amyot and Luster discovered that the foundation was defective. Amyot hired Bryan Borjesson, a professional engineer, to inspect the house, which he did on February 14, 1994. Borjesson informed Amyot that the foundation had completely failed.

Soon thereafter Amyot demanded that the Luchinis rescind the sale. They refused. Amyot obtained two repair estimates, both for approximately $100,000, and began replacing the failed foundation with a concrete foundation.[2]

Amyot sued the Luchinis for the cost of the repairs under innocent, negligent, and intentional misrepresentation theories. Following briefing by the parties, the superior court concluded that innocent misrepresentation claims were precluded by AS 34.70.010 et seq.

After a two-week trial of Amyot's other claims, the jury returned a verdict in favor of the Luchinis. On the special verdict form the jury answered "no" to these questions: (1) "Were the defendants negligent in not disclosing the condition of 2142 Penrose Lane?" and (2) "Did the defendants misrepresent the condition of 2142 Penrose Lane?" The superior court awarded the Luchinis attorney's fees in the amount of $26,087.60, forty percent of their attorney's fees.

Amyot appeals. He argues that the superior court erred in (1) ruling that AS 34.70.010—34.70.200 precludes innocent misrepresentation claims; (2) failing to grant his motion for summary judgment on the innocent misrepresentation claim; (3) failing to instruct the jury on innocent misrepresentation; (4) instructing the jury "that misrepresentations made on prescribed disclosure forms are not actionable unless such misrepresentations were negligent or willful"; and (5) granting enhanced attorney's fees to the Luchinis.

## III. DISCUSSION

### A. Standard of Review

■ Whether AS 34.70.010—34.70.200 preclude innocent misrepresentation claims is a question of law to which the court applies its independent judgment. See Odum v. University of Alaska, Anchorage, 845 P.2d 432, 434 (Alaska 1993). "On questions of law, this court is not bound by the lower court's decision. . . . [Its] duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### B. Innocent Misrepresentation in Alaska

We first recognized the claim of innocent misrepresentation in Cousineau v. Walker, 613 P.2d 608 (Alaska 1980). We held that false statements as to the road frontage of the land and its gravel content made by a seller in a real estate listing could provide the basis for rescission of the sales contract, even if the statements were innocently made, and even if the buyer was negligent in relying on them. Id. at 616.

In Bevins v. Ballard, 655 P.2d 757, 762–63 (Alaska 1982), we extended innocent misrepresentation liability to real estate brokers, and reaffirmed Cousineau:

> We have recognized a cause of action against the owner of realty who innocently

---

1. Amyot visited the house on at least three occasions. He also had Craig Robinson, a contractor he previously had employed, inspect the house. Prior to purchase, Amyot was aware of a number of defects in the house including unevenness in the floor in the bedroom over the garage; "sponginess" in the floor in the sunroom; "irregularities" in the east wall of the foundation and the garage; and cracked beams in the garage.

2. At the Luchinis' request, Rydberg, the engineer who earlier had concluded that the foundation was satisfactory, drafted a repair design and estimate. Rydberg's repair estimate was for approximately $20,000. Amyot decided against using a Rydberg design.

misrepresents its condition to the purchaser. *Cousineau v. Walker*, 613 P.2d 608 (Alaska 1980).... In so doing, we held that an owner guilty of even innocent misrepresentation could not hide behind the doctrine of caveat emptor. *Id.* at 614–16. This is so because owners are presumed to know the character and attributes of the land conveyed and buyers are consequently entitled to rely on the seller's reasonable representations.

*Bevins*, 655 P.2d at 762 (emphasis omitted).[3]

### C. Effect of AS 34.70 on Innocent Misrepresentation Claims

■ Effective July 1, 1993, AS 34.70 governs disclosures in transfers of interests in residential real property. It provides:

**Sec. 34.70.010. Disclosures in residential real property transfers.** Before the transferee of an interest in residential real property makes a written offer, the transferor shall deliver by mail or in person a completed written disclosure statement in the form established under AS 34.70.050....

....

**Sec. 34.70.030. Liability after disclosure.** A transferor is not liable for a defect or other condition in the real property or the real property interest being transferred if the transferor discloses the existence of the defect or condition in the disclosure statement.

....

**Sec. 34.70.050. Form of disclosure statement.** The Real Estate Commission established under AS 08.88.011 shall establish the form of the disclosure statement required by AS 34.70.010.

**Sec. 34.70.060. Good faith.** A person who makes a disclosure or performs an act under this chapter shall do so in good faith.

**Sec. 34.70.070. Effect on other required disclosures.** The requirements of this chapter do not affect other obligations for disclosure required by law.

....

**Sec. 34.70.090. Failure to comply.** (a) A transfer that is subject to this chapter is not invalidated solely because a person fails to comply with this chapter.

(b) A person who negligently violates this chapter or fails to perform a duty required by this chapter is liable to the transferee for the amount of actual damages suffered by the transferee as a result of the violation or failure.

(c) A person who wilfully violates this chapter or fails to perform a duty required by this chapter is liable to the transferee for up to three times the actual damages suffered by the transferee as a result of the violation or failure.

....

Amyot argues that the claim of innocent misrepresentation recognized in *Cousineau* and *Bevins* survived the enactment of AS 34.70. Thus inaccurate representations in the disclosure statement, even if made in good faith, are actionable. We disagree.

Prior to the enactment of AS 34.70, sellers of real property were not required to make any representations about the property. However, sellers were strictly liable for those representations they made. *See Cousineau*, 613 P.2d at 616. Under the disclosure statute a seller is now required to make representations about a wide range of the property's features and characteristics. We conclude that the legislature intended to offset the seller's increased disclosure responsibilities by the lower liability standard for misrepresentations.[4]

Several factors point to this conclusion. First, AS 34.70.090(b) subjects to liability "[a] person who *negligently* violates this chapter or fails to perform a duty required by this chapter[.]" AS 34.70.090(b) (emphasis added). By explicitly adopting a negligence standard of liability in this subsection, the

---

**3.** Bevins involved a misrepresentation as to the adequacy of a well serving an unfinished residence.

**4.** The actual result in *Cousineau* would be unchanged even if the statute had been in existence at the time of the sale, for the sale was not residential property and, in addition, road frontage and gravel content are not conditions covered in the disclosure statement mandated by AS 34.70.

legislature has implicitly rejected liability based on lesser gradations of fault. *See Sprague v. State,* 590 P.2d 410, 415 (Alaska 1979) (in a statutory scheme the exclusion of absent remedies is to be inferred from the inclusion of specified remedies).

 Similarly, the requirement that sellers make disclosures "in good faith," AS 34.70.060, indicates that the legislature intended no liability to attach for an inaccurate statement on the disclosure form if made in good faith. By its plain language, the provision establishes the standard of conduct to which those making disclosures must conform. The legislature did not include a definition of "good faith" in chapter 70. *See* AS 34.70.200. In the chapter dealing with residential landlord and tenant relations, the legislature has defined good faith as "honesty in fact in the conduct of the transaction concerned." AS 34.03.360(5). In the adverse possession context, we have defined good faith as "an honest and reasonable belief." *Ault v. State,* 688 P.2d 951, 956 (Alaska 1984). Whatever the precise definition, it is clear that innocent misrepresentations do not violate the good faith standard. By definition, the only standard of liability such representations can offend is strict liability.

Consistent with the good faith standard of AS 34.70.060, the disclosure form established by the Real Estate Commission, *see* AS 34.70.050, seeks responses made "[t]o the best of [the seller's] knowledge." Like "good faith," this language is not consistent with a strict liability standard for innocent misrepresentations.

The superior court correctly concluded that AS 34.70 precludes claims of innocent misrepresentation as to residential property concerning conditions included in the mandatory disclosure form. To be actionable, misrepresentations in the disclosure form must at least be negligently made.

### D. *Other Issues*

Based on our conclusion that AS 34.70 precludes a claim of innocent misrepresentation, Amyot's arguments that the superior court should have granted him summary judgment or instructed the jury on his innocent misrepresentation claims must fail.

Amyot amended his points on appeal to include the issue of whether the superior court's attorney's fees award was error. He also listed it among the "Issues Presented For Review" in his opening brief. Nevertheless, Amyot failed to discuss the issue in his opening brief. The appellees noted this failure in their brief. In his reply brief Amyot offered neither explanation for his failure nor argument on the attorney's fees issue. He has waived the issue. *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

### IV. *CONCLUSION*

The judgment of the superior court is AFFIRMED.

RABINOWITZ, J., not participating.