1997 SD 124

**Karen S. ENGELHART, Plaintiff and Appellee,**

v.

**Crystal Kay KRAMER, Defendant and Appellant.**

**Nos. 19963, 19966.**

Supreme Court of South Dakota.

Argued Sept. 10, 1997.

Decided Oct. 29, 1997.

Rehearing Denied Dec. 1, 1997.

James A. Craig of Craig Law Office, Sioux Falls, for plaintiff and appellee.

Dennis Duncan and Jeffrey A. Cole of Zimmer, Duncan and Cole Parker, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] A $34,800 judgment was rendered against Crystal Kay Kramer based on violation of SDCL ch 43–4 and for failure to properly disclose a defect in the home she sold to Karen Engelhart. The case was tried without a jury before the Second Judicial Circuit Court. Kramer appeals the award claiming that Engelhart did not show that Kramer failed to meet the required standard in completing the seller's property disclosure statement.[1] We affirm.

## FACTS AND PROCEDURE

[¶ 2.] In May of 1991, Crystal Kay Kramer purchased a home in Sioux Falls, South Dakota for $35,000. Over the next few years Kramer made several improvements. Four days prior to putting the home on the market, in September, 1993, Kramer enlisted the support of friends and family and began an extensive cleaning of the basement. There were several large cracks in the basement's cement walls and pieces of various sizes had fallen off. They removed old sheet rock and put up wood paneling over the basement walls. The basement project was memorialized by Kramer with several photographs depicting the before, during and after condition of the walls.

[¶ 3.] During this period Karen Engelhart was searching for a home commensurate with her income level. Engelhart was a first-time home buyer and was assisted by Dorothy Ecker, a real estate agent. Engelhart viewed Kramer's home, became interested, and then decided to purchase it.

[¶ 4.] Kramer was represented by Shirley Ullom, a Century 21 Advantage, Inc. real estate agent. Kramer completed the detailed "property condition disclosure statement" form required by SDCL 43–4–44. Part two of the form required the seller to disclose certain structural information. Specifically, question 2 asked "Have you experienced water penetration in the basement ... within the past two years?" Kramer replied, "Small amt of H20 penetration in NW + NE corners [when it] rains." (emphasis added). In answering question 3 "[a]re there any cracked walls or floors?" Kramer responded "basement floor, some spots in basement walls, East bedroom walls." Under § 5, Miscellaneous Information, Kramer was required to disclose any additional problems that were not previously mentioned. Kramer offered, *"basement cement walls have some crumbling,* behind paneling, basement floor cracked [and] uneven in spots." (emphasis added).

[¶ 5.] The trial court found that Engelhart relied upon, among other things, Kramer's disclosure statement with regard to the condition of the basement walls and that Engelhart believed "some spots" and "some crumbling" to mean the problems were minimal. Kramer allegedly offered to remove the paneling to expose the basement walls but the trial court concluded that the offer was "a gambit, or a bluff ... without any real intention of performing" and that the typical buyer in Engelhart's position would be "reluctant to remove paneling from someone else's house." Kramer admitted taking photographs before installing the paneling and that showing the photos to a potential purchaser would have been easier than removing it. Kramer could not explain why she did not offer the photos.

[¶ 6.] Engelhart purchased the property in October 1994. In March of 1995, she discovered water seepage through the *south* wall of the basement. The paneling was removed and water was discovered running through cracks in the south wall. Also noted were several other large cracks, including a large horizontal crack running around the basement. Engelhart hired a structural engineer, Chester Quick (Quick) to diagnose the problem. Quick issued a report in which

---

1. Kramer also argues that the trial court erred in finding Kramer's actions constituted fraud and deceit. In light of our disposition of the case on the disclosure requirement issue, the fraud and deceit issue need not be addressed. *See Wood v. City of Crooks,* 1997 SD 20, 559 N.W.2d 558 n. 2 (citing *Poppen v. Walker,* 520 N.W.2d 238, 248 (S.D.1994) ("Principles of judicial restraint dictate that when an issue effectively disposes of the case, other issues that are presented should not be reached.")). Both parties appeal the trial court's award of attorney's fees. We need not address this issue since neither party properly preserved the record on this issue. *State v. Handy,* 450 N.W.2d 434, 435 (S.D.1990).

he found the basement walls "very badly cracked" and testified that the cement had "leeched out" which allowed dirt and water to pass into the basement.[2] Further, Quick noted that the concrete was showing "considerable disintegration especially at the south wall" which was not repairable. He concluded that the foundation had to be replaced and that "As bad as [the walls] are cracked they could collapse at any time." When asked whether the disclosure statement adequately described the condition of the basement Quick testified that, although accurate in part, "some crumbling" did not adequately describe the damage that existed behind the paneling.

[¶ 7.] Engelhart brought suit against Kramer based upon misrepresentations made in the disclosure statement. The trial court ruled in favor of Engelhart on failure to comply with South Dakota's Disclosure Statutes and fraud. Kramer appeals the $34,800 award entered against her.

## STANDARD OF REVIEW

[¶ 8.] Our standard of review of the trial court's findings of fact is under a clearly erroneous standard. *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995); *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D.1995). The trial court's findings will not be disturbed unless the court is "firmly and definitely convinced a mistake has been made." *Jasper*, 540 N.W.2d at 401. Conclusions of law, on the other hand, are reviewed under a de novo standard, giving no deference to the trial court's conclusions of law. *Id.* Questions of law, including statutory construction, we review de novo. *West Two Rivers Ranch v. Pennington County*, 1996 SD 70, ¶ 6, 549 N.W.2d 683, 685.

## LEGAL ANALYSIS AND DECISION

[¶ 9.] **Whether Kramer failed to complete the disclosure statement in good faith as required by SDCL Ch 43–A?**

[¶ 10.] In 1993 the South Dakota legislature enacted specific requirements for disclo-

sures in certain real estate transfers. SDCL §§ 43–4–38 to –44. SDCL 43–4–38 provides:

> The seller of residential real property shall furnish to a buyer a completed copy of the disclosure statement before the buyer makes a written offer. If after delivering the disclosure statement to the buyer or the buyer's agent and prior to the date of closing for the property or the date of possession of the property, whichever comes first, the seller becomes aware of any change of material fact which would affect the disclosure statement, the seller shall furnish a written amendment disclosing the change of material fact.

SDCL 43–4–41 requires that "The seller shall perform each act and make each disclosure in good faith." SDCL 43–4–40 absolves sellers of liability for defects in certain circumstances by providing:

> Except as provided in § 43–4–42, a seller is not liable for a defect or other condition in the residential real property being transferred if the seller *truthfully completes* the disclosure statement.

(Emphasis added). The disclosure form mandated by SDCL 43–4–44 establishes that beyond the above obligations, there is no warranty passing from the seller to the buyer:

> THIS STATEMENT IS A DISCLOSURE OF THE CONDITION OF THE ABOVE DESCRIBED PROPERTY.... IT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR ANY AGENT REPRESENTING ANY PARTY IN THIS TRANSACTION AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE PARTIES MAY WISH TO OBTAIN.

(Capitals in original).

[¶ 11.] Kramer relies on SDCL 43–4–40 and contends that even if her description of the basement was inadequate or under Kramer's phraseology, an innocent misrepresentation, that it was truthful nonetheless and therefore no liability should attach. It is

---

**2.** Quick testified that the wall was "a mixture of sand, cement [which holds the mixture together], and usually some rock, and over time with excess water and cracks the cement 'leeches out' of the mixture and you wind up with nothing but sand and rock."

important to note that in SDCL 43-4-40, the terms "truthfully" and "complete" do not operate independently to the exclusion of the other. A plain reading of the terms together evince a more exacting standard than truth alone. *Ellis v. City of Yankton,* 526 N.W.2d 124, 126 (S.D.1995) (must construe words in statute that are related together; must derive the intent of the statute from reading it as a whole); *Kelley v. Duling Enters., Inc.,* 84 S.D. 427, 433, 172 N.W.2d 727, 730 (1969) ("In construing a particular word or term in a statute reference will be had to the meaning of the words with which it is associated.").

[¶ 12.] Until today, this Court has not addressed the scope of the disclosure statutes at issue. Of central concern to our resolution is what is required by the term "good faith," in the absence of a definition in SDCL 43-4-41, and whether the disclosure of "some crumbling" violates that standard? We recognize that the concept of "good faith" may, at times, seem as elusive as the "reasonableness" that is spoken of in the law of torts. However, there exists several sources from which meaning can be found.

■ [¶ 13.] Statutory guidance can be found at SDCL 2-14-2(13) which states that "good faith" is:

an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious;

*Black's Law Dictionary* 693 (6th ed 1990) offers the following:

Good faith is an intangible and abstract quality with no technical meaning or statutory definition, and it encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage.... In common usage this term is ordinarily used to describe that state of mind denoting honesty of purpose, freedom of intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.

Case law decided under different contexts has provided additional meaning to the term "good faith" to include "honesty in fact," *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 841 (S.D.1990) (contractual context; meaning of good faith "varies with the context and emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party"), and an "honest belief in the suitability of the actions taken." *B.W. v. Meade Co.,* 534 N.W.2d 595, 598 (S.D.1995), (in the context of reporting and investigating child abuse). In the case now before us the trial court properly relied upon the definition found in SDCL 2-14-2(13).

■ [¶ 14.] Kramer contends that since she described the condition of the basement walls as having "some spots" and "some crumbling," she fulfilled her duty of good faith by truthfully completing the Disclosure Statement. Kramer argues that to hold otherwise would, in effect, result in a strict liability standard on sellers of real estate. We disagree.

[¶ 15.] SDCL 43-4-42 provides:

A transfer that is subject to §§ 43-4-37 to 43-4-44, inclusive, is not invalidated solely because a person fails to comply with §§ 43-4-37 to 43-4-44, inclusive. However, a person who *intentionally or who negligently* violates §§ 43-4-37 to 43-4-44, inclusive, is liable to the buyer for the amount of the actual damages and repairs suffered by the buyer as a result of the violation or failure. A court may also award the buyer costs and attorney fees. Nothing in this section shall preclude or restrict any other rights or remedies of the buyer.

(Emphasis added).

[¶ 16.] Kramer relies on *Amyot v. Luchini,* 932 P.2d 244 (Alaska 1997), for the proposition that a disclosure statement can be truthful yet not "perfect" and that "innocent misrepresentations" do not violate good faith. However, it must be noted that Kramer's representation of the issue to this Court incorrectly assumes that the misrepresentation of the basement walls was found merely innocent by the trial court. To the contrary, the trial court specifically found that the Kram-

er's paneling of the walls four days before putting the house on the market was not "solely for aesthetic purposes" and was completed *deliberately*[3] in an attempt to hide their true condition. Kramer's colorful attempt to characterize her description of the basement as an innocent misrepresentation is inaccurate.

[¶ 17.] In 1993, Alaska enacted residential real property disclosure statement statutes (substantially similar to that of South Dakota enacted the same year). Alaska Stat. §§ 34.70.010 to 34.70.090 (Michie 1996).[4] The *Amyot* court stated:

> Prior to the enactment of [the mandatory disclosure statutes], sellers of real property were not required to make any representations about the property. However, sellers were strictly liable for those representations they made. (Citation omitted.) Under the disclosure statute a seller is now required to make representations about a wide range of the property's features and characteristics. We conclude that the legislature intended to offset the seller's increased disclosure responsibilities by the lower liability standard for misrepresentations.

*Amyot,* 932 P.2d at 246.

[¶ 18.] We agree with the *Amyot* court and hold that strict liability is not the requisite standard under South Dakota's disclosure statutes. A plain reading of SDCL 43–4–42 tells us that liability will not attach unless an intentional or negligent violation occurs. The legal maxim *"expressio unius est exlusio alterius"* means "the expression of one thing is the exclusion of another." *Black's Law Dictionary* 581 (6th ed.1990). The maxim is a general rule of statutory construction. *Aman v. Edmunds Cent. Sch. Dist. No. 22–5,* 494 N.W.2d 198 (S.D.1992); *Argo Oil Corp. v. Lathrop,* 76 S.D. 70, 74, 72

N.W.2d 431, 434 (1955). Applying the general rule to SDCL 43–4–42, we find the language "intentionally or ... negligently" is exclusive and negates strict liability.

[¶ 19.] It is fair to presume that sellers know the character of the property they convey. At present, when Kramer became aware of Engelhart's concern over the basement she could have simply shown the pictures of its true condition. Her failure to do so was unreasonable and amounts to negligence. SDCL 43–4–42. It must be noted that Kramer admitted taking the photographs before installing the paneling and that showing the photos would have been easier than removing it. Kramer could not explain why she did not offer the photos.

[¶ 20.] We hold that with the adoption of South Dakota's detailed disclosure statutes the doctrine of *caveat emptor* has been abandoned in favor of full and complete disclosure of defects of which the seller is aware. We are not inferring, as Kramer suggests, that a seller must possess the expertise of a structural engineer to pass good faith muster. Nor are we suggesting that a seller will be liable for defects of which she is unaware. Those claims are clearly disposed of in the closing section of the mandated disclosure form of SDCL 43–4–44:

> The Seller hereby certifies that the information contained herein is true and correct to the best of the Seller's information, knowledge and belief as of the date of the Seller's signature below.... THE SELLER AND THE BUYER MAY WISH TO OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO OBTAIN A TRUE REPORT AS TO THE CONDITION OF THE PROPERTY AND TO PROVIDE FOR APPROPRIATE PROVISIONS IN ANY CONTRACT OF SALE AS NEGOTIAT-

---

**3.** The trial court relied on Kramer's deposition and trial testimony in that when she purchased the house "[t]he walls were crumbling with cracks in places," that the residue she had discovered on the basement floor was "Part of the basement wall ... whatever makes up the wall was there in a pile" and further that Kramer admitted in her disclosure statement that no water ever came in on the south wall.

**4.** The Alaska disclosure statutes did not define "good faith" but held that "good faith" envisioned an "honest and reasonable belief." *Id.* at 247. *Amyot* is distinguishable from the present facts in that the court held an "innocent misrepresentation" did not violate the good faith standard. South Dakota does not attach liability in this context unless the seller's conduct amounts to an "intentional or negligent" violation the disclosure statutes. SDCL 43–4–42.

ED BETWEEN THE SELLER AND THE BUYER WITH RESPECT TO SUCH PROFESSIONAL ADVICE AND INSPECTIONS.

(Capitals in original). It is clear that, as per SDCL § 43–4–41 and 43–4–44, a seller's "good faith" is determined under a reasonable person standard.

[¶ 21.]  Affirmed.

[¶ 22.]  MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.