NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DEBORAH CROPPER, | ) | |
| | ) | Supreme Court No. S-15243 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-12588 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| BERNARD YESCAVAGE and | ) | AND JUDGMENT* |
| SUN CHA YESCAVAGE, a Married | ) | |
| Couple, and in their capacities as trustees | ) | No. 1508 - July 2, 2014 |
| of the Bernard and Sun Cha Yescavage | ) | |
| Living Trust, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Steven D. Smith, Law Offices of Steven D. Smith, P.C., Anchorage, for Appellant. Melinda D. Miles, Palmer, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

I.     INTRODUCTION

After learning that her house had a foundation problem, the homeowner sued the previous owners for non-disclosure of the defect, negligent misrepresentation of the condition of the house, and negligent repair of the foundation. The superior court

---

\*     Entered under Alaska Appellate Rule 214.

ruled in favor of the previous owners on all claims, and the homeowner appeals two specific decisions by the superior court. We affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

In early 2009 Bernard and Sun Cha Yescavage listed their house for sale. A potential buyer made an offer and had the house inspected by a professional home inspector, Donna Ranson. Ranson discovered that ground movement was putting pressure on the house's foundation skirting, causing warping and bowing of the walls. Ranson wrote a home inspection report and gave that report to the Yescavages. The report listed specific necessary repairs, including installing "diagonal supports on all bowing walls to brace against the pressure of the ground."

The Yescavages had a telephone conversation with a contractor about Ranson's report. The contractor's opinion was that the repair would include excavating around the house's foundation and replacing the dirt with gravel around the house's perimeter, and that it would cost "several thousand dollars."

The Yescavages asked Ranson whether such an extensive repair was necessary. Ranson told the Yescavages that more bracing was necessary on parts of the foundation, similar to what already existed on other walls of the house. The Yescavages made the repairs themselves by constructing a wooden bracing for the foundation. Ranson conducted a second inspection of the house and notified the Yescavages that the bracing angle was wrong. The Yescavages reconstructed the bracing. Ranson inspected again and concluded that all required repairs had been made. Despite the approved home inspection, the potential buyer withdrew from the sale because of failed financing.

Later that year Deborah Cropper purchased the Yescavages' house. Cropper and the Yescavages signed an earnest money agreement describing the terms and conditions of the sale, including Cropper's right to have a professional inspection

of the house. The Yescavages included a copy of Ranson's inspection reports with the agreement, and Cropper initialed a page on the agreement acknowledging receipt of the inspection reports. Before closing, Bernard Yescavage showed Cropper the crawl space where he had made the repairs to the house's foundation. Cropper did not hire her own inspector to inspect the house, and the Yescavages did not tell Cropper about the telephone conversation with the contractor regarding repairing the foundation.

After owning the house for little more than one year, Cropper heard "loud popping noises and cracking" coming from the floors and walls of the house. Cropper hired a friend to install new braces and supports for the foundation. Cropper also hired a contractor, who estimated that repairing the foundation would cost nearly $50,000, including excavating the perimeter of the house and replacing the dirt with fill gravel. Cropper filed suit against the Yescavages, alleging willful misrepresentation of the condition of the property and negligent construction of the braces. Cropper later amended her complaint to specify three causes of action: (1) non-disclosure of defects in the house and of the contractor's recommendation; (2) negligent misrepresentation of the adequacy of the repairs; and (3) negligent repair of the house's foundation.

## B. Proceedings

The superior court held a non-jury trial, hearing testimony from Cropper, Bernard Yescavage, Ranson, Cropper's contractor, and the original homebuilder. The superior court issued written findings of fact and conclusions of law, resolving all claims in favor of the Yescavages.

First, the court concluded that Cropper failed to prove her non-disclosure claim under AS 34.70.[1] The court stated that information about the foundation defect

___

[1] AS 34.70 requires sellers to disclose the condition of property and "make representations about a wide range of the property's features and characteristics." (continued...)

and the repair to the houses's skirting "was clearly known to the Yescavages," and the only question was "whether the Yescavages failed to take reasonable steps to disclose the information to [Cropper] and whether [Cropper] justifiably relied on an understanding of the transaction that was based on lack of information." The court determined that the Yescavages reasonably believed the foundation problem was repaired based on Ranson's approval. Cropper's claim therefore failed because the Yescavages disclosed the defect and repair; not telling Cropper about the contractor's initial repair estimate was reasonable because that was only an informal consultation.

Second, the court concluded that Cropper failed to prove her negligent misrepresentation claim. The elements of that claim required Cropper to prove that the Yescavages made false statements when selling the house. The superior court found that the Yescavages had not made any false statements and were not negligent in their representations to Cropper.

Third, the court concluded that Cropper failed to prove her claim for negligent repair of the foundation: "There is no evidence that the work performed by [Yescavage] failed, rather, the design itself was flawed." The court determined that the repair was not performed negligently and, therefore, Cropper could not show that the Yescavages had failed to use reasonable care in making the repairs.

The court considered and rejected two additional claims Cropper made. The court first noted that Cropper had twice sought to amend her complaint and add a cause of action for breach of warranty. But the court rejected the motions to amend because Cropper had demonstrated no evidence supporting the warranty claim. Cropper's second additional claim, made for the first time during closing arguments, was

---

[1]    (...continued)
*Amyot v. Luchini*, 932 P.2d 244, 246 (Alaska 1997).

that it would be inequitable for the Yescavages to keep the benefit of the house sale knowing that the house needed a $50,000 repair: "I think what it is really — probably the easiest way to say it, it would just be unjust enrichment for [the Yescavages]." But the court concluded there was "insufficient evidence" the Yescavages knew a $50,000 repair was needed, and Cropper had the home-buying knowledge and experience to obtain her own home inspection. Thus, the court ruled for the Yescavages on this claim.

Cropper filed a motion for reconsideration presenting two arguments, only one of which is relevant to this appeal. Cropper argued that the court erred by not applying the law of innocent misrepresentation. Cropper cited *Cousineau v. Walker*[2] and argued that by addressing only intentional and negligent misrepresentation, the court had failed to consider an innocent misrepresentation cause of action: "The *Cousineau* case makes clear that such a cause of action for innocent misrepresentation does exist and it is controlling in this situation." The court failed to act on Cropper's motion for reconsideration, and it is deemed denied.[3]

Cropper appeals the superior court's judgment and failure to grant her motion for reconsideration. But her arguments are limited: Cropper claims the superior court erred by applying the caveat emptor doctrine to bar her equitable relief claim and by denying reconsideration based on her *Cousineau* innocent misrepresentation claim.

## III.   STANDARD OF REVIEW

"Whether there has been unjust enrichment is generally a question of fact.

---

[2]      613 P.2d 608, 614-16 (Alaska 1980) (recognizing innocent misrepresentation as a cause of action in real estate transactions).

[3]      Alaska R. Civ. P. 77(k)(4).

As such, the trial court's determination should not be set aside unless clearly erroneous."[4] But "[w]here the facts are clearly established, the issue becomes one of law, and the court must adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5] "[W]e review a trial court's decision on equitable relief for abuse of discretion."[6] We also "review the denial of a motion for reconsideration for abuse of discretion."[7]

## IV. DISCUSSION

### A. Unjust Enrichment

Courts have broad authority to grant equitable remedies to avoid injustice.[8] Cropper's unjust enrichment claim required three elements: "1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof."[9]

---

[4] *State, Dep't of Revenue, Child Support Enforcement Div. v. Wetherelt*, 931 P.2d 383, 390 n.11 (Alaska 1997) (citing *Wright v. Black*, 856 P.2d 477, 479 (Alaska 1993)).

[5] *Id.* (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)) (internal quotation marks omitted).

[6] *Cook v. Cook*, 249 P.3d 1070, 1082-83 (Alaska 2011) (citing *In re Estate of Fields*, 219 P.3d 995, 1002 (Alaska 2009)).

[7] *Smith v. Groleske*, 196 P.3d 1102, 1105 (Alaska 2008) (citing *Manelick v. Manelick*, 59 P.3d 259, 262 (Alaska 2002)).

[8] *See Murray v. Ledbetter*, 144 P.3d 492, 503 (Alaska 2006) (describing equity as a power born to correct injustice); *Alaska State Emps. Ass'n v. Alaska Pub. Emps. Ass'n*, 825 P.2d 451, 455 (Alaska 1991).

[9] *Alaska Sales & Serv., Inc. v. Millet,* 735 P.2d 743, 746 (Alaska 1987).

Cropper's primary argument is that the superior court improperly applied the caveat emptor doctrine to bar her equitable relief claim. Cropper asserts that the court wrongfully faulted Cropper for not hiring her own expert to inspect the house, while at the same time not faulting the Yescavages for relying on Ranson.

Cropper does not challenge the superior court's factual findings underlying its denial of equitable relief, including the following: (1) the Yescavages reasonably relied on Ranson's inspection reports; (2) the Yescavages actually and reasonably believed they had repaired the foundation problems Ranson noted; (3) the Yescavages did not negligently repair the foundation; (4) the Yescavages disclosed the facts of the foundation problem and their repair; (5) the Yescavages made no misrepresentations to Cropper; (6) the Yescavages did not know a $50,000 foundation repair was needed; and (7) Cropper was an experienced real estate investor who had the right to obtain her own home inspection but chose not to do so. The court's written decision makes clear that it considered these facts, balanced the equities, and analyzed the reasonableness of the parties' actions. The court neither mentioned caveat emptor nor applied a per se risk on the buyer. Instead, the court considered the parties' duties and their respective knowledge and expectations when arriving at its conclusion that denying Cropper relief would not be unfair. On the unchallenged facts, we cannot conclude that the court erred by denying equitable relief.

## B.    Reconsideration Motion

Cropper argues that the superior court erred by not ruling in her favor on her innocent misrepresentation claim. But that claim was not pleaded or raised during trial, and was presented to the superior court only in Cropper's post-decision motion for reconsideration. A motion for reconsideration is not a proper vehicle for bringing new

claims,[10] and the superior court did not abuse its discretion by not granting reconsideration.[11]

## V.    CONCLUSION

We AFFIRM the superior court's judgment.

---

[10]    *McCarter v. McCarter*, 303 P.3d 509, 513 (Alaska 2013) (new arguments raised for the first time in a motion for reconsideration are waived); *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1155 (Alaska 2009) ("[W]e will not consider an issue raised for the first time in a motion for reconsideration.").

[11]    We also note that in *Amyot v. Luchini*, 932 P.2d 244, 247 (Alaska 1997), we held a superior court had correctly concluded that AS 34.70's real estate disclosure framework "precludes claims of innocent misrepresentation as to residential property concerning conditions included in the mandatory disclosure form.  To be actionable, misrepresentations in the disclosure form must at least be negligently made."