In the Matter of the Appeal of Robert TEMPLETON From the Decision of the South Dakota Retirement System Denying Disability.

No. 15286.

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1986.

Decided April 1, 1987.

Roger L. Severns, Jr., Sp. Asst. Atty. Gen., Pierre, for appellant South Dakota Retirement System; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Joseph M. Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for claimant and appellee.

MILLER, RONALD K., Circuit Judge.

Robert Templeton (Templeton) applied for disability benefits from the South Dakota Retirement System (SDRS). The administrator of SDRS denied his application. Templeton appealed to the South Dakota Retirement System Board (Board). A hearing examiner recommended that the Board grant Templeton's application for disability benefits but the Board denied Templeton's application. Templeton appealed the Board's decision to circuit court, which reversed the decision of the Board and adopted the hearing examiner's findings of fact and conclusions of law. The SDRS brings this appeal. We affirm.

Templeton earned a high school diploma and was trained in the plumbing and heating field. He held a Contractor's Plumbing License and was employed in plumbing and heating maintenance at Black Hills State College prior to his injury. He had no administrative training or experience.

Templeton injured his right shoulder in December 1981 and was physically unable to perform most of the tasks incident to his trade. After repeated medical examina-

tions and consultations, including surgery, he advised his employer that he could no longer function in his accustomed capacity due to the immobility of his dominant arm.

Shortly thereafter, Black Hills State College created a new half-time position responsible for administering a preventative maintenance planning (PM) program on the campus. The minimum qualifications for the position included a high school diploma, familiarity with data processing equipment, five years of mechanical/electrical experience, and familiarity with preventative maintenance programming. Furthermore, the PM position required that seventy percent of the employee's time be spent establishing and carrying out the comprehensive preventative maintenance plan, which included computer programming of preventative maintenance scheduling. The job also included coordination of campus energy conservation efforts and inspection and supervision of campus construction. The job required the employee to be familiar with data processing devices and electronic equipment. The employee was responsible for generating regularly programmed preventative maintenance schedules, monthly reports on energy conservation efforts with analysis of paybacks, and preliminary grant application preparation.

Even though Templeton satisfied only two of the job's minimum qualifications (the diploma and the maintenance experience), he began work in the PM program in April 1983. He was paid less than one-half of what he had previously received as a plumbing and heating maintenance worker.

Before developing and implementing the PM plan, a great amount of data and information on the existing mechanical and physical makeup of the campus had to be collected. Templeton competently and satisfactorily performed these tedious chores. Essentially, he journeyed about the campus and compiled a detailed inventory of the existing physical plant. However, Templeton resigned before the preventative maintenance plan was fully developed because he could not live on what he was earning on a half-time basis.

The scope of this court's review is prescribed by SDCL 1–26–37. This court makes the same review of the administrative agency's decision as did the circuit court, and it is unaided by any presumption that the circuit court's decision was correct. *Application of Northwestern Bell Telephone Co.*, 382 N.W.2d 413, 415–416 (S.D. 1986); *Raml v. Jenkins Methodist Home*, 381 N.W.2d 241, 242–243 (S.D.1986). We do not substitute our judgment for the agency's judgment on the weight of evidence pertaining to questions of fact unless the agency's decision is clearly erroneous, or is arbitrary, capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.*

The statutory criteria for establishing the right to disability benefits are contained at SDCL ch. 3–12. The statutory provision relevant to this appeal is SDCL 3–12–47(18), which defines "disability" and "disabled" as:

> Any medically determinable physical or mental impairment which prevents a member from performing his usual duties for his employer; or the duties of a position of comparable level for which he is qualified by education, training and experience, and excludes any condition resulting from willful, self-inflicted injury.

Both parties agree the sole dispute is whether Mr. Templeton's medically determinable physical impairment prevented him from performing the duties of a position of comparable level for which he was qualified by education, training, and experience.

Having examined the facts behind this case, this court must attempt to apply the somewhat ambiguous legislative definition of "disability" to those facts. In a closer case, this task might be extraordinarily difficult, "for surely that phrase (position of comparable level) must be descriptive of a fairly broad range of alternative tasks."

*Gourley v. Board of Trustees of South Dakota Retirement System,* 289 N.W.2d 251, 255 (S.D.1980) (Wollman, C.J., dissenting). The effect of this ambiguous definition of disability, coupled with the "clearly erroneous" standard of review, is to vest great weight in the administrative agency's determination.

But this case is not a close case. The SDRS Board's decision to deny Templeton's application for benefits was both clearly erroneous and arbitrary and capricious. The preventative maintenance position was merely part-time and Templeton received less than one-half the remuneration he had received before his injury. "Certainly a part-time job is not a position of comparable level." *Gourley, supra* at 255.

Not only was the preventative maintenance position not of a comparable level, but Templeton was not qualified by education, training, and experience to perform the necessary duties. The preventative maintenance job required familiarity with computer programming, energy conservation, supervision of all phases of campus construction, and skills with data processing devices. The job also demanded that regular reports be prepared from these activities. Templeton may have had some tangential familiarity with the periphery of these responsibilities, as indicated by his satisfactory performance of the preliminary aspects of his job. But the mere fact that Templeton performed the part-time job of obtaining serial numbers from the equipment is scant evidence that he was qualified by his education, training, and experience to fulfill the duties of the job when fully developed.

The judgment of the circuit court is affirmed.

All the Justices concur.

MILLER, RONALD K., Circuit J., for FOSHEIM, Retired J., disqualified.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.