Judy **BENTLEY**, Plaintiff
and Appellant,

v.

**NEW YORK LIFE INSURANCE
COMPANY**, Defendant,

and

**Michele R. Foster, f/k/a Michele R. Murphy, Individually and as Guardian, and Natural Mother for Her Minor Children, Molli Erin Murphy and Patrick Michael Murphy, II, Substituted Defendant and Appellee.**

No. 17638.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1992.

Decided July 22, 1992.

Rehearing Denied Aug. 25, 1992.

Gregory N. Lohr, Sioux City, Iowa, Michael Hanlon, Sioux Falls, for plaintiff and appellant.

Denis R. Eckert, Elk Point, for substituted defendant and appellee.

SABERS, Justice.

Beneficiary of a life insurance policy appeals a trial court determination denying

her claim to all insurance proceeds. We reverse in part.

## FACTS

Michele Foster (Foster) and Patrick Murphy (Murphy) were married on February 10, 1973. In 1976, Murphy purchased a term life insurance policy, # 35–248–152 (Policy 1), on his own life from New York Life Insurance Company (New York). Policy 1 was a decreasing term policy with a death benefit that decreased over the 20–year term of the policy. The policy was originally in the amount of $25,000. The primary beneficiary on this policy was Foster and the children were named as secondary beneficiaries.

On October 22, 1981, Foster and Murphy were divorced. The divorce stipulation provided:

Husband and Wife shall continue to maintain the present life insurance coverage on themselves with the children as beneficiaries during the period of the children's minority.

On October 21, 1986, Murphy converted Policy 1 to policy # 38–975–021 (Policy 2) pursuant to a conversion privilege.[1] Policy 2 was a whole life policy in the amount of $25,000 with an increasing cash value. Murphy named Judy Bentley (Bentley), his intended spouse, as the only beneficiary on Policy 2. Murphy and Bentley never married. Murphy died August 30, 1990. Upon his death, Foster, as parent and legal guardian for the two minor children, submitted a claim to New York on Policy 2.

Bentley brought suit against New York to collect the insurance proceeds. New York paid the proceeds into court pursuant to SDCL 15–6–67(b) and was allowed to substitute Foster as defendant. Foster and Bentley both moved for summary judgment. The trial court granted summary judgment in favor of Foster and ordered the proceeds from Policy 2 paid to Foster as parent and guardian of the minor children. Bentley appeals claiming the court erred by (1) granting summary judgment for Foster, (2) denying her motion for summary judgment, and (3) denying her motion for partial summary judgment. We treat all issues together.

## SUMMARY JUDGMENT

Bentley claims the court erred by granting summary judgment for Foster.

Summary judgment is proper only where 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D.1991) (quoting *Breen v. Dakota Gear & Joint Co., Inc.*, 433 N.W.2d 221, 223 (S.D.1988)). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987).

Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 837 (S.D.1990); *Pickering v. Pickering*, 434 N.W.2d 758, 760–61 (S.D.1989).

Bentley now argues that Policy 1 was different and distinct from Policy 2 thereby raising a genuine issue as to material facts. However, none of the facts concerning the two policies were in dispute. Each party moved for summary judgment claiming that there were no genuine material issues of fact. The parties agreed to a list of undisputed facts with only one minor addition by Bentley. No genuine material issue as to any fact existed. Therefore, we review the construction and application of the divorce stipulation as a matter of law. *See Sorensen v. Nelson*, 342 N.W.2d 477, 479 (Iowa 1984).

Bentley argues that, since Policy 1 had no effect after its conversion to Policy 2,

---

1. At the time Policy 1 was converted to Policy 2, the death benefit had decreased from $25,000 to $16,250. Had Policy 1 remained in effect, the amount would have decreased to $11,000 as of Murphy's death.

Foster had no equitable rights in the proceeds of Policy 2. The principles involved in determining entitlement to insurance policy proceeds were stated in *Jacoby v. Jacoby,* 69 S.D. 432, 11 N.W.2d 135 (1943):

> [A] beneficiary named in a policy which contains a provision reserving a right in the insured to change the beneficiary is without a so-called vested right in the policy, he may nevertheless become invested with equitable rights therein through a separate contract with the insured, and that such rights may prevail over the legal and equitable rights of one who has been subsequently substituted as the named beneficiary.... That such an equitable right in the policy may arise from a settlement of property rights in connection with a divorce proceeding is not questioned.

*Id.* 11 N.W.2d at 135 (citations omitted); *see also Matter of Estate of Lemer,* 306 N.W.2d 244, 245–46 (S.D.1981).

In *Lemer,* this Court stated that when a decedent/insured was required, pursuant to a settlement of property rights, to name his "children as the beneficiaries of any life insurance policies he owned at the time of the agreement ... the rights to the insurance policy proceeds may vest in the children as third-party beneficiaries." *Id.* at 246. The decedent/insured in *Lemer* did not terminate the insurance policies or allow them to lapse, he merely changed the beneficiary designations. The Court held that the children "acquired a vested equitable right in the insurance policies owned by decedent at the time of the agreement and that such right prevails over the rights of [a new beneficiary]." *Id.* at 247.

Where the decedent/insured terminates or allows the insurance policy to lapse, the equitable interests of the beneficiaries under the divorce stipulation also lapse. Their remedy becomes a cause of action

against the estate of the decedent/insured rather than a cause of action on the policy itself. *Jacoby,* 11 N.W.2d at 137; *see also Behrens v. Milliken,* 461 N.W.2d 276, 280 (S.D.1990); *Rindels v. Prudential Life Ins. Co. of America, Inc.,* 83 N.M. 181, 489 P.2d 1179, 1181 (1971); *Lock v. Lock,* 8 Ariz. App. 138, 444 P.2d 163, 168 (1968).

In this case, Policy 1 contained a conversion privilege and Murphy converted Policy 1 to Policy 2 simply by filing an application. Thus, Policy 1 did not terminate or lapse and Foster's equitable rights in Policy 1 continued in Policy 2 despite Murphy's failure to rename the minor children as beneficiaries. *Lemer* 306 N.W.2d at 247; *Stackhouse v. Russell,* 447 N.W.2d 124, 125 (Iowa 1989). However, the equitable rights of Foster in Policy 1 went only to that particular policy and not to any specified dollar amount. Under the divorce stipulation, Murphy was required to "maintain the present life insurance coverage" not the present *monetary level* of coverage. In other words, Murphy was only required to maintain the life insurance policies in effect at the time of the stipulation. Because the death benefits under Policy 1 decreased during the term of the policy, Foster's equitable rights therein also decreased. *See Washington v. Hicks,* 109 Wis.2d 10, 325 N.W.2d 68, 70 (App.1982). Since the death benefit from Policy 1 would have been only $11,000 at the time of Murphy's death, Foster's equitable interest therein was only $11,000.

> The divorce judgment by its terms did not anticipate or provide for an increase in insurance benefits, and therefore, no rights to the enhanced value accrued to [former spouse].

*Id.* 325 N.W.2d at 70. Therefore, the balance or remaining amount goes to the designated beneficiary Bentley as a non-marital asset.[2] The trial court erred in award-

---

2. Foster relies on *Merchant v. Merchant,* 130 Mich.App. 566, 343 N.W.2d 620, 625 (1983), for support that, in addition to any amount awarded under the stipulation, the children are entitled to a lien on any remaining amounts up to the amount of child support arrearages existing

at the time of Murphy's death. However, the *Merchant* court stated:

> An insurance provision such as the one under consideration here may be viewed as a part of a divorcing parent's support obligation.... When so viewed, the children receive the life insurance proceeds *only* to the extent that

ing the full $25,000 to Foster as parent and guardian of the minor children.

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., and HENDERSON, J., dissent.

MILLER, Chief Justice (dissenting).

I dissent because I disagree with the analysis employed by the majority opinion. I would find that insurance proceeds should be held as a fund for satisfaction of the support obligation owing to the children under the terms of the property settlement. *Merchant v. Merchant*, 130 Mich. App. 566, 343 N.W.2d 620 (1983); *Matter of Estate of Monreal*, 126 Mich.App. 60, 337 N.W.2d 312 (1983). The property settlement provided in part:

2.5 That the Husband shall pay as child support through the Woodbury County Clerk of District Court the sum of $30.00 per week per child for a total of $60.00 per week child support. Such child support payments of $30.00 per week per child shall commence upon the filing of the decree of dissolution herein and continue thereafter on a weekly basis subject to paragraph 2.6 and 2.7 herein.

2.6 Said $30.00 per week per child support payments shall continue thereafter on a weekly basis, until said respective child reaches the age of eighteen years, becomes emancipated or dies, whichever shall first occur, subject, however, to paragraph 2.7 herein.

2.7 That pursuant to Section 598.1(2) of the Code of Iowa, the Husband shall continue the payment of child support until said child or children reaches the age of 22 years, if said child or children is continuing his or her higher education as a full time student pursuant to said statute.

Thus, Murphy was to pay child support, *at least*, until the children reached age eighteen. The *Merchant* and *Monreal*

they are still entitled to child support at a decedent's death.

*Merchant*, 343 N.W.2d at 625 (citations omitted) (emphasis added). Were this Court to view the insurance provision under the divorce stipulation as part of Murphy's support obligation,

cases viewed the insurance provision in the property settlement as security to protect the children's right to support during their minority. *See also Gray v. Independent Liberty Life Ins. Co.*, 57 Mich.App. 590, 226 N.W.2d 574 (1975). I would also adopt this approach.

The majority misconstrues *Merchant* in footnote 2, wherein it states:

Were this court to view the insurance provision under the divorce stipulation as part of Murphy's support obligation, Foster would be entitled to *only* $10,173 that Murphy owed in support arrearages.

When Murphy died in 1990, the children were ages thirteen and ten and were still entitled to child support. Thus, it makes no sense to me that under a provision in the property settlement which was to provide for their support in case of their father's death they could only receive the amount in arrears. In *Merchant*, the court held that since the children were no longer minors they were only entitled to the amount in arrears. That is not the case here. In fact, Murphy's children could be entitled to support until they reach age twenty-two, pursuant to the property settlement. The amount of future support would reach well over $20,000 and when added to the $10,173 in arrears, the amount exceeds the $25,000 proceeds. Furthermore, it is irrelevant that Mother received $19,000 in insurance proceeds from completely separate life insurance policies.

Finally, I believe that it is important to point out to the majority that it is the children who have equitable rights in the insurance policy pursuant to the property settlement, *not the mother*. Perhaps the opinion should reflect the distinction.

HENDERSON, Justice (dissenting).

Joining the dissent of Miller, C.J., it strikes me that it is far more just that the children of Patrick Murphy be entitled to

Foster would be entitled to *only* $10,173 that Murphy owed in support arrearages. *Id.* Foster's argument is also diminished in that she has already received life insurance proceeds in excess of $19,000 from Murphy's other insurance policies.

the insurance proceeds provided for them in the original property settlement agreement, than to have his girlfriend receive same.

The grant of the summary judgment is proper because there is a sound basis to support Judge Tapken's ruling. *Blote v. First Fed. Sav. & Loan Ass'n.*, 422 N.W.2d 834, 836 (S.D.1988).

Father, in my opinion, did his flesh and blood wrong. He elevated his girlfriend over his obligation to (1) his children and (2) a court decree. Father should not have violated the decree. A constructive trust should be imposed upon the proceeds of this policy to prevent unjust enrichment and fairness. *Jacoby v. Jacoby*, 69 S.D. 432, 11 N.W.2d 135 (1943). Mother of the children (Foster) appear as *guardian* for the two Murphy children; in my opinion, the children are the real parties in interest, and thus entitled to the proceeds.

Converting policy one to policy two was a total abdication of father's impressed, contractual liability. In this regard, *see also, Richards v. Richards*, 58 Wis.2d 290, 206 N.W.2d 134 (1974) and *Serrano v. Hendricks*, 400 N.W.2d 77 (Iowa App.1986).

An old legal maxim is applicable here: You must be just before you are generous. *First Nat. Bank of Beresford v. Anderson*, 291 N.W.2d 444, 446 (S.D.1980) (Henderson, J., specially concurring). Before father was generous to his girlfriend, he should have been just with his children.

I would affirm the trial court. It acted in Equity. The Iowa divorce decree was in Equity.