**In the Matter of the STATE SALES TAX LIABILITY OF John J. SIMPSON, Attorney.**

**Nos. 18015, 18026.**

Supreme Court of South Dakota.

Argued Jan. 12, 1993.

Decided May 19, 1993.

John J. Simpson, pro se.

Mark Barnett, Atty. Gen., Timothy T. Weber, Dept. of Revenue, Pierre, for appellee, Dept. of Revenue of the State of South Dakota.

SABERS, Justice.

Department of Revenue assessed taxpayer for delinquent sales taxes, penalty, and interest based upon the retroactive application of a statute of limitations or, alternatively, a finding of fraud. Taxpayer appeals. We affirm on fraud.

FACTS

As a result of a routine canvass of Winner, South Dakota, by the Department of Revenue (Department) on December 28th and 29th, 1988, the Department determined that John J. Simpson (Simpson) failed to obtain a sales tax license in 1965 when

attorney's fees became subject to sales tax. After an audit of Simpson's books and records for the years 1969 through February, 1989, Simpson was assessed tax, penalty and interest totaling $58,342.[1] Under SDCL 10–59–9, Simpson requested and received a hearing before the Secretary of Revenue (Secretary) in order to contest the audit. Except for adjustments for recalculation of penalty, credit of reimbursable expenses, and credit for payments made by Simpson prior to the hearing, the audit was affirmed. The Secretary ordered Simpson to pay $45,479 in taxes, penalty, and interest. The circuit court affirmed.[2]

On appeal, Simpson raises five issues.[3]

1. Whether SDCL 15–2–13(2)[4] is tolled because of fraud or because Simpson fraudulently concealed a cause of action.

The Hearing Examiner held, in the alternative, that the statute of limitations in SDCL 15–2–13(2) did not bar the assessment because Simpson committed fraud. Therefore, the statute of limitations did not begin to run until the Department discovered the fraud, The circuit court affirmed the Department's findings of fraud.

2. Whether SDCL 10–59–16[5] can be applied retroactively from its effective date of July 1, 1986, thereby reviving actions outside the statute of limitations in SDCL 15–2–13(2).

The Hearing Examiner held that SDCL 10–59–16 is a remedial statute intended to be applied retroactively.

3. Whether the application of SDCL 10–59–16 to bar claims against Simpson violates Article XI § 2 and Article III § 24 of the South Dakota Constitution.

The circuit court held that Article III § 24 of the South Dakota Constitution prohibits the legislature from enacting any statute which would extinguish Simpson's indebtedness to the State. Since legislation is to be interpreted in a manner which will survive constitutional scrutiny, SDCL 15–2–13 and 10–59–16 cannot be construed as placing limitations upon actions involving debts arising to the State.

4. Whether SDCL 10–45–4 and the exemption statutes classified thereunder are arbitrary and unreasonable and violate Article VI, §§ 17 and 18 and Article XI, § 7 of the South Dakota Constitution and Article XIV of the United States Constitution as a denial of equal protection and due process.

A review of Simpson's brief and supplemental brief to the circuit court fails to reveal that this issue was raised below. This court has consistently held that failure to raise an issue below prevents this court from reviewing the issue on appeal. *See*

---

**1.** Simpson was not audited for the years 1965 through 1968 because he was a state's attorney and had little or no private practice during these years.

**2.** The circuit court affirmed the Findings of Fact and Conclusions of Law of the Secretary of Revenue.

**3.** Simpson filed a Notice of Review to preserve issues the circuit court did not rule upon even though there appears to be no reason or authority for same.

**4.** SDCL 15–2–13 provides in part:
Except where, in special cases, a different limitation is prescribed by statute, the following civil actions ... can be commenced only within six years after the cause of action shall have accrued:

.    .    .    .    .

(2) An action upon a liability created by statute[.]

**5.** SDCL 10–59–16 provides:
Unless a proceeding or audit or action is commenced to determine and collect the tax, the collection thereof shall be barred *three years* from the date the return reporting the tax is filed by or on behalf of the taxpayer. There is no bar to assessment or collection of taxes, penalty or interest in the following instances:
(1) Any period for which a taxpayer *fails to obtain or maintain a license* or permit required to engage in the activity which results in the tax obligation;
(2) Any period for which a taxpayer *fails to file a required return* or report or files a fraudulent return or report; or
(3) Any tax, penalty or interest first legally due and payable within three years of the date of mailing of a notice of intent to audit.
(Emphasis added.)

*Sharp v. Sharp,* 422 N.W.2d 443 (S.D. 1988) (constitutional issues may not be raised for the first time on appeal).

5. Whether interest at the rate of 1½% per month on a sales tax judgment is usurious and violates equal protection; Whether payment of judgment or filing a supersedes bond as a condition precedent to appeal is also violative of equal protection; Whether SDCL 10–59–16 can be applied retroactively; Whether the Department had actual and constructive knowledge of Simpson's practice of law; Whether Conclusions of Law 4, 6, and 7 are contrary to law.

Simpson's brief violates SDCL 15–26A–60(6). He has failed to cite the authorities relied upon for his proposition, to present his issues separately, and to avoid needless repetition. *See Ashker v. Solem,* 457 N.W.2d 473, 478 (S.D.1990) (citations omitted). Additionally, most of these issues were not raised below. *See* Issue 4.

Because we hold that Simpson committed fraud under Issue 1, Issues 2 and 3 will not be reached. The claims within Issues 4 and 5 were either not raised below and will not be reached on appeal, or are without merit and are affirmed without further discussion.[6]

■ The standard of review of an administrative appeal is governed by SDCL 1–26–36. "[T]his court makes the same review of the agency's decision as did the trial court, and we are unaided by any presumption that [the] trial court's decision was correct." *In re K.O. Lee Co.,* 489 N.W.2d 606, 608 (S.D.1992) (citing *In re Templeton,* 403 N.W.2d 398, 399 (S.D.1987)). The findings of fact are given deference and reviewed under the clearly erroneous standard. The conclusions of law, however, are

fully reviewable. *Id.* (citations omitted); *Oberle v. City of Aberdeen,* 470 N.W.2d 238, 241 (S.D.1991) (citations omitted).

## Commission of Fraud Tolls the Statute of Limitations

■ "A claim for fraud and deceit is generally a question of fact for the fact finder." *Tri–State Refining and Investment Co. v. Apaloosa Co.,* 431 N.W.2d 311, 314 (S.D.1988) (citation omitted). The Department, as finder of fact in this case, found that Simpson perpetrated fraud on the State of South Dakota. These findings were affirmed by the circuit court.

The Department found that Simpson practiced law from 1965 through January 22, 1989 without applying for a sales tax license. And yet, he collected sales tax from some of his clients, particularly when he completed written customer billing statements. Specifically, on at least three occasions, Simpson charged sales tax on probate files. Prior to February 16, 1989, however, Simpson never filed any sales tax returns or remitted any sales tax to the State on the gross receipts he received, nor did he remit to the State any of the sales tax he collected. "The basic ingredient of fraud involves a state of mind. It means an actual evil motive or intent to evade taxes due to the government or *willfully acting contrary to the truth within the taxpayer's knowledge.*" Balter, *Tax Fraud* and *Evasion,* (5th ed. 1983) para. 8.03[9]. (Emphasis added.) We hold that there is sufficient evidence in the record to support the findings by the Department that Simpson committed fraud.

■ *Karras v. State, Dept. of Rev.,* 441 N.W.2d 678 (S.D.1989) notes that if there is no express statute of limitations

---

**6.** We suggest that Simpson review the Rules of Appellate Procedure, specifically, SDCL 15–26A–60 which provides in part:

> The brief of the appellant shall contain under appropriate headings and in the order here indicated:

> . . . . .

> (4) A concise statement of the legal issue or issues involved, omitting unnecessary detail. Each issue shall be stated as an appel-

late court would state the broad issue presented. Each issue shall be followed by a concise statement of how the trial court decided it.

In addition, Simpson, pro se, wholly failed to comply with SDCL 15–26A–60(5) which requires facts, not arguments, in a statement of facts and a reference to the record where such facts appear.

regarding sales taxes, SDCL 15–2–13(2) is applied. *Id.* at 681. According to SDCL 15–2–13(2), "[a]n action upon a liability created by statute" must be commenced within six years after the cause of action accrues.[7] SDCL 15–2–3 provides, however, that "[i]n an action for relief on the ground of fraud the cause of action shall not be deemed to have accrued until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud." As noted above, the Department did not discover, or have actual or constructive notice of, Simpson's fraud until December 29, 1988 when the Department canvassed Simpson's office. Therefore, because the State commenced this action within six years from the time it discovered Simpson's fraud, the assessment is not barred. *Id. See also K.O. Lee,* 489 N.W.2d at 609 (citing *Karras* for the proposition that a showing of fraud suspends the statute of limitations for sales tax collection).

We affirm.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs with a writing.

HENDERSON, Justice (concurring).

As the majority writing notes, the Department of Revenue assessed Simpson for delinquent sales taxes, penalties, and interest for perpetrating fraud on the State of South Dakota. Simpson collected sales tax without a license, as depicted below. Furthermore, he never remitted all of these collected revenues to the State.

There is a key difference from my special concurrence in *Matter of Discipline of Simpson,* 467 N.W.2d 921, 923 (S.D.1991), as I shall mention. At the time of that writing, collecting and not remitting sales

tax, had not been established. It has now been established in subsequent legal proceedings that he did, in fact, collect some sales tax and retain it, yet failed to deliver it to the State of South Dakota. Simply put, additional evidence now exists that was not known before. In the above reported case, Simpson pleaded guilty thereinbefore to one count of engaging in a "business" without a sales tax license. SDCL 10–45–48.1(9).

According to the Findings of Fact:

6. When investigated in 1989, Simpson admitted that he did not have a sales tax license.

10. Simpson charged sales tax *for probates* in 1971, 1976 and 1982.

21. An audit of Simpson's customer billing statements showed that he had charged sales tax during the 1960s. Simpson admitted that he did not always prepare billing statements, but when he did, he did charge sales tax.

28. Prior to 2/16/89, Simpson had never filed any sales tax returns nor remitted any sales tax to the State.

For the above reasons, the hearing examiner held that Simpson committed a fraud by collecting sales tax on behalf of the State and did not remit those funds. The Sixth Judicial Circuit affirmed the Findings of Fact and Conclusions of Law.

Simpson does not *now* deny that he is liable for certain sales tax deficiencies *or* complain that the amount of tax owed is in error. Rather, he claims that the statute of limitations for collecting the back taxes has run and is thereby uncollectible. In light of the newly developed evidence in Findings of Fact 10 and 21 above, it appears that there has been some fraud. Further, the record would *now* substantiate the fraudulent concealment.

---

7. Simpson was statutorily obligated to obtain a sales tax license. SDCL 10–45–24 provides in part that *"[e]very* retailer or person engaging in a business in this state whose receipts are subject to sales tax *shall* file with the department of revenue, an application for a permit or permits." (Emphasis added.) Additionally, SDCL 10–45–27 requires that Simpson file a return,

remitting sales tax to the Department. SDCL 10–45–27 provides that *"every* person who is the holder of a sales tax permit, or is a retailer whose receipts are subject to sales tax in this state ... *shall* make a return and remittance to the department of revenue[.]" (Emphasis added.)

The statute of limitation for fraud does not begin to run "... until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud." SDCL 15-2-3. Here, the cause of action against Simpson did not begin until December 29, 1988 when revenue agent Magdanz canvassed Simpson's office. Before that time, there was no evidence that the State was cognizant of Simpson's failure to be properly licensed and remit sales tax. *See also Tri–State Refining v. Apaloosa Company,* 431 N.W.2d 311, 314 (S.D. 1988). Attorneys in South Dakota add sales tax to the fees charged to their clients by virtue of SDCL 10-45-22. By applying these facts to precedent, the attorney remains ultimately liable for payment of the tax, whether he collects the tax from his client or not. *Loel Lust Chevrolet Co. v. Commissioner of Revenue,* 83 S.D. 285, 158 N.W.2d 603 (1968).

By an unreported judgment dated March 10, 1993, Supreme Court of South Dakota, John Simpson was immediately reinstated to practice law in all courts in this state. It was further provided, however, that such reinstatement be conditioned upon, essentially: (1) making restitution to the State of South Dakota of sales tax, penalty and interest as finally determined by the South Dakota Supreme Court; (2) submitting a plan of payment therefore, to be approved by the South Dakota Supreme Court, thereby achieving complete restitution; (3) submitting a sworn financial statement to this Court of relevant factors concerning his ability to pay the aforesaid amount, to include a recitation of his assets and liabilities; (4) repaying all costs and expenses associated with his reinstatement.