1999 SD 154

**Shanna M. FOX, Plaintiff and Appellee,**

and

**Michael D. Fox, Plaintiff,**

v.

**Kathleen R. BURDEN f/k/a Kathleen R. Fox, Defendant and Appellant.**

No. 20811.

Supreme Court of South Dakota.

Argued Sept. 15, 1999.

Decided Dec. 15, 1999.

Gary P. Thimsen and Ms. Jayna M. Voss of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for plaintiffs and appellees.

Peter J. Horner of Christopherson, Bailin & Anderson, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Kathleen Burden, a/k/a Kathleen Fox (Kathleen), appeals the trial court's award of a portion of Jerald Fox's (Jerald) life insurance policy proceeds to her daughter, Shanna Fox (Shanna). We affirm in part, reverse and remand in part.

### FACTS

[¶ 2.] Kathleen and Jerald were originally married on November 29, 1975. While married, the couple had two children: Michael and Shanna. On August 7, 1990, the couple was granted a divorce pursuant to a judgment and decree of divorce. Pursuant to a stipulation and agreement (agreement) signed by the parties on August 3, 1990, and later incorporated into the divorce decree, Jerald agreed to change the name of the beneficiary on his $100,000 life insurance policy from Kathleen to his minor children. The agreement was drafted by Kathleen's attorney. Jerald was not represented by counsel during the divorce proceeding or the drafting of the agreement.

[¶ 3.] Unexpectedly, Jerald died in a car accident ten days after the divorce decree was entered. He had not drafted a will, nor made the change of beneficiary on his life insurance policy. At the time of his death, Michael and Shanna were his only two children. After Jerald's death, Kathleen applied for and received the $100,000 proceeds from Jerald's $100,000 life insurance policy with Old Line Life through the Kouri Agency in Sioux Falls, South Dakota. The Old Line Life policy was original-

ly purchased in June 1983 and named Kathleen as the designated beneficiary.

[¶ 4.] Prior to receiving the insurance proceeds, Kathleen never informed anyone of the insurance provision in the divorce agreement. In addition to the life insurance proceeds from Old Line Life, Kathleen received a small death benefit from an auto insurance policy with Allied Life Insurance. When Jerald originally obtained his life and auto insurance policies from the Kouri Agency, Kouri only sold Allied auto insurance, not Allied life insurance. The life insurance was covered by Old Line Life.

[¶ 5.] Nearly eight years later, Kathleen decided to sell her residence. The original agreement required certain equity to go to Jerald. Therefore, Kathleen contacted her daughter, Shanna, to arrange for settlement of Jerald's equity in the home. Kathleen had offered Jerald's share of the proceeds from the sale of the house to Shanna and Michael.

[¶ 6.] Before responding to her mother's offer, Shanna went to the county courthouse and obtained a copy of the agreement. Under the document, in paragraph nine, the "insurance provision" read as follows:

> That the Defendant [Jerald Fox] agrees to name his minor children as beneficiary on his $100,000 life insurance policy with Allied Insurance Company. The Defendant agrees to show proof of insurance to Plaintiff [Kathleen Burden] whenever requested by the plaintiff.

Upon discovering the provision, Shanna contacted her attorney and, subsequently, Michael and Shanna filed suit against their mother for misapplication of the life insurance proceeds and fraudulent concealment.*

[¶ 7.] On April 7, 1998, pursuant to Shanna's motion, the trial court entered a temporary restraining order restraining Kathleen from selling, transferring, secreting, conveying or otherwise disposing of or parting with possession of any property, real or personal, except for minor funds as may be necessary for maintenance of life until further order or the parties agreed in writing to the contrary.

[¶ 8.] At trial, Kathleen argued she first noticed the discrepancy with regards to the insurance company name in the complaint and the name of the company which paid her proceeds. She immediately informed the court and attempted to amend her answer and discovery responses to reflect that the $100,000 life insurance policy was not issued by "Allied Life," but "Old Line Life." The court reserved its ruling on this motion until after the parties had submitted additional briefs on this issue.

[¶ 9.] The trial court found that Kathleen and Jerald agreed that he would name their children as beneficiaries of his "$100,000 life insurance policy" and the children's equitable rights in the proceeds prevailed over Kathleen's rights. Further, the court found that the reference to "Allied Life" instead of "Old Line Life" was the result of a mutual mistake between Kathleen and Jerald, and it clearly was the intent of the parties that the only existing $100,000 life insurance policy on the life of Jerald was the "Old Line Life" policy. Shanna was awarded one-half the proceeds of the $100,000 insurance policy, plus interest.

[¶ 10.] Kathleen appeals the trial court's determination and raises the following issues:

1. Whether the trial court erred in sua sponte reforming the stipulation and agreement substituting Old Line Life for Allied Life Insurance Company.

2. Whether the trial court erred in determining that Shanna had a superior right to the life insurance proceeds of the Old Line Life insurance policy upon which Kathleen was named beneficiary.

---

* Prior to trial, Michael withdrew from the action.

3. Whether Shanna's complaint which sought damages based upon asserted contract rights is barred by the statute of limitations.

4. Whether the trial court erred in refusing to permit a jury trial upon the request of Kathleen.

5. Whether the trial court erred in failing to find that Kathleen, as the natural guardian and conservator of Shanna during her minority, was entitled to a setoff against such proceeds for amounts expended on Shanna's behalf for her care and welfare.

6. Whether the trial court erred in refusing to grant Kathleen's motion to amend her answer and discovery responsive pleadings to conform with the evidence that she never received proceeds from Allied Life Insurance Company.

## DECISION

[¶ 11.] 1. **Whether the trial court erred in sua sponte reforming the stipulation and agreement substituting Old Line Life for Allied Life Insurance Company.**

[¶ 12.] It is well settled that "[d]ivorce stipulations are governed by the rules of contract; their interpretation is a matter of law for the courts to decide." *Hisgen v. Hisgen,* 1996 SD 122, ¶ 4, 554 N.W.2d 494, 496 (citing *Houser v. Houser,* 535 N.W.2d 882, 884 (S.D.1995)). Because construction of a contract is a question of law, our standard of review is de novo. *See Alverson v. Northwestern Nat'l Cas. Co.,* 1997 SD 9, ¶ 5, 559 N.W.2d 234, 235. Further, due to the fact that " 'we can review the contract as easily as the trial court, there is no presumption in favor of the trial court's determination.' " *Singpiel v. Morris,* 1998 SD 86, ¶ 8, 582 N.W.2d 715, 717 (quoting *Commercial Trust & Sav. Bank v. Christensen,* 535 N.W.2d 853, 856 (S.D.1995) (citations omitted)). *See also Baker v. Wilburn,* 456 N.W.2d 304,

306 (S.D.1990) (noting that "effects and terms of a contract are questions of law to be resolved by the court ... without a presumption in favor of the trial court's determination.").

[¶ 13.] To determine " 'the proper interpretation of a contract the court must seek to ascertain and give effect to the intention of the parties.' " *Singpiel,* 1998 SD 86, ¶ 10, 582 N.W.2d at 718 (quoting *Malcolm v. Malcolm,* 365 N.W.2d 863, 865 (S.D.1985) (citations omitted)). In *Cole v. Melvin,* 441 F.Supp. 193 (D.S.D.1977), the court held that in interpreting the contract,

> [w]e are fully aware that the Court must avoid rewriting the contract; rather, it will be this Court's endeavor to establish the intention of the parties at the time the agreement was made. We cannot pierce the parties' mental processes to find out what images were on their brains, but must be content to examine the words which were used in the business context in which they were used in order to objectively establish the parties' intentions. Looking at the words of the contract in the business setting in which they were written, the Court will try to answer the primary questions upon which a resolution of the controversy turns.

*Id.* at 199 (citations omitted). To interpret the intent of the parties in forming a contract, we " 'must look to the language that the parties used.' " *Singpiel,* 1998 SD 86, ¶ 10, 582 N.W.2d at 718 (quoting *Malcolm,* 365 N.W.2d at 865 (citations omitted)). The plain and ordinary meaning of the contract language will ordinarily be followed unless the language is ambiguous or a different intention is manifested. *American State Bank v. Adkins,* 458 N.W.2d 807, 809 (S.D.1990) (citing Restatement (Second) of Contracts § 203(3) (1981)). "Whether the language of a contract is ambiguous is a question of law for the court." *Baker,* 456 N.W.2d at 306 (citing *Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149 (S.D.1986)). It is

well settled that "[a] contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *Id..* (citations omitted).

[¶ 14.] In interpreting the agreement, the use of the name of the wrong insurance company in the provision is not critical, nor is it significant, compared to the type and the amount of the insurance owned by Jerald, since the clear intent of the parties was to provide financial security to Jerald's children in the unlikely event that he should succumb to an early death. *See, e.g., Evans v. Evans,* 1997 SD 16, ¶ 25, 559 N.W.2d 240, 246 (noting that the parties originally agreed to set aside the insurance policies for the children to protect the children's financial needs should the insured die before his children were raised). Specifically, the financial security chosen was in the amount of $100,000 and in the form of a life insurance policy.

[¶ 15.] At the time the agreement was drafted, Jerald was unrepresented by counsel and Kathleen was represented by the drafters, East River Legal Services. Jerald had only one life insurance policy in the amount of $100,000 at the time of signing the stipulation and at the time of his death. Both parties signed the agreement prior to its incorporation into the divorce decree. Kathleen claims that she did not know the insurance provision was in the agreement, nor did she remember any discussion involving the inclusion of the provision. This Court has previously stated that " '[t]o permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.' " *LPN Trust v. Farrar Outdoor Adver., Inc.,* 1996 SD 97, ¶ 13, 552 N.W.2d 796, 799 (quoting 17A AmJur2d *Contracts* § 224–228 (1991)). Therefore, we cannot allow Kathleen to claim she never had knowledge of the pro-

vision when her own attorney drafted the document and she signed it.

[¶ 16.] Kathleen argues that the trial court erred in sua sponte reforming the agreement by substituting Old Line Life for Allied Life Insurance. We find that this is not the case. Rather, we find that despite the reference to "reformation" by the trial court, it did not reform the contract; instead, it interpreted the contract provision to determine who was entitled to the insurance proceeds. The trial court, in interpreting the contract, came to the correct conclusion. Therefore, we find that the trial court did not err in its interpretation of the insurance provision.

[¶ 17.] **2. Whether the trial court erred in determining that Shanna had a superior right to the life insurance proceeds of the Old Line Life insurance policy upon which Kathleen was named beneficiary.**

[¶ 18.] This Court has previously noted that " '[a]n equitable right in the [insurance] policy may arise from a settlement of property rights in connection with a divorce proceeding is not questioned.' " *Bentley v. New York Life Ins. Co.,* 488 N.W.2d 77, 79 (S.D.1992) (quoting *Jacoby v. Jacoby,* 69 S.D. 432, 434, 11 N.W.2d 135, 135 (1943)). In *Bentley,* the divorcing parties entered into a stipulation which required the parties to name their children as the beneficiaries of their present life insurance coverage. *Id.* at 78. The court noted that "when a decedent/insured was required, pursuant to a settlement of property rights, to name his 'children as the beneficiaries of any life insurance policies he owned at the time of the agreement . . . the rights to the insurance policy proceeds may vest in the children as third-party beneficiaries.' " *Id.* at 79 (quoting *Matter of Estate of Lemer,* 306 N.W.2d 244, 246 (S.D.1981)).

[¶ 19.] In *Lemer,* which is analogous to the present case, the property settlement agreement entered by the parties and incorporated into the divorce decree, provid-

ed that any life insurance policies owned by John Lemer were to be changed to make the three children the beneficiaries. *Id.* at 245. Before he died, Lemer remarried and changed the beneficiary to his second wife. *Id.* This Court held that the rights in an insurance policy's proceeds may vest in the children, even if minors, as third-party beneficiaries. *Id.* at 246. The three children had "acquired a vested equitable right in the insurance policies owned by [the] decedent at the time of the agreement and that such right prevails over the rights of" the named beneficiary. *Id.* at 246–47 (citing *Jacoby,* 69 S.D. 432, 11 N.W.2d 135; *Mutual Life Ins. Co. of New York v. Franck,* 9 Cal.App.2d 528, 50 P.2d 480 (1935)). The three children were entitled to the proceeds of the insurance policies. *Id.* at 247.

[¶ 20.] In *Evans,* we reviewed the trial court's award of four insurance policies to the children of the insured instead of the wife of the insured, who was one of the named beneficiaries. 1997 SD 16, ¶¶ 23–25, 559 N.W.2d at 245–46. The parties had originally agreed that the policies would be set aside from marital estate and that the children would be made beneficiaries of the policies to protect the children's financial needs should the insured die before his children were raised. *Id.,* ¶ 25, 559 N.W.2d at 246. We concluded that the insured was required by court order to maintain the policies for the life of the children to provide security for his daughters' welfare. *Id.,* ¶ 26, 559 N.W.2d at 246 (citing *Merchant v. Merchant,* 130 Mich. App. 566, 343 N.W.2d 620, 625 (1983)).

[¶ 21.] In the present case, Kathleen and Jerald entered the agreement, which was incorporated into the divorce decree, for the purpose of protecting the financial welfare of their children should Jerald die before the children were raised. Like *Bentley* and *Lemer,* Shanna and Michael acquired a vested equitable right in the life insurance policy owned by their father at the time of the agreement. As previously discussed, the name of the insurance com-

pany is less significant than the type and amount of insurance that the father had. Jerald agreed to designate his children as beneficiaries of his "$100,000 life insurance policy." He had only one $100,000 life insurance policy when the agreement was drafted and he had only that same policy when he died. Therefore, Jerald's children obtained an equitable right in the only $100,000 life insurance policy he had when the agreement was entered into and their rights prevail over the rights of Kathleen, the named beneficiary.

[¶ 22.] Kathleen contends that *Girard v. Pardun,* 318 N.W.2d 137 (S.D.1982) is controlling precedent in this case. In *Girard,* this Court was faced with a stipulation and agreement provision which stated that " 'the defendant shall keep in force and effect all presently existing hospitalization insurance.' " *Id.* at 138. At the time of Paul Girard's death, Verna, Paul's first wife, was the designated beneficiary of his life insurance policy. *Id.* Paul's second wife, Marjorie, brought an action against Verna claiming that Verna had contracted away her interest as beneficiary to Paul's life insurance policy by entering into the agreement. *Id.* In affirming summary judgment for Verna, the named beneficiary at Paul's death, this Court refused to interpret the hospitalization insurance provision in the agreement to include all insurance policies. *Id.* at 140.

[¶ 23.] We find that *Girard* is distinguishable from the present case and appellee's reliance on this case as controlling is misplaced. We noted in *Girard* that Verna's "expectancy could only be contracted away by *reference to the life insurance policy in the Stipulation and Agreement* and we decline to rewrite divorce stipulations and agreements to contain such a reference." *Id.* (emphasis added). This statement alone provides the simple distinction between the present case and *Girard.* In the case before us, there is a specific reference to the life insurance policy in the agreement; as such, Kathleen's property rights in the policy were con-

tracted away by her signing of the agreement. Therefore, the trial court did not err in holding that Shanna had a superior equitable right over Kathleen in her share of the $100,000 Old Line Life insurance policy proceeds.

[¶ 24.] **3. Whether Shanna's complaint which sought damages based upon asserted contract rights is barred by the statute of limitations.**

[¶ 25.] It is well settled that "[t]he construction of a statute and its application to particular facts present a question of law, reviewed *de novo.*" *Bosse v. Quam,* 537 N.W.2d 8, 10 (S.D.1995) (citing *Schoenrock v. Tappe,* 419 N.W.2d 197, 201 (S.D.1988) (citing *Johnson v. Rapid City Softball Ass'n,* 514 N.W.2d 693, 695 (S.D.1994))) (emphasis in original). Under the de novo standard, we give "no deference to the trial court's conclusions of law." *Engelhart v. Kramer,* 1997 SD 124, ¶ 8, 570 N.W.2d 550, 552 (citing *Jasper v. Smith,* 540 N.W.2d 399, 401 (S.D.1995)).

[¶ 26.] The trial court found that the action was not barred by the statute of limitations. As previously noted, a divorce stipulation is governed by the rules of contract. *Hisgen,* 1996 SD 122, ¶ 4, 554 N.W.2d at 496. The statute of limitations for an action upon a contract is six years. *See* SDCL 15–2–13(1) (providing an action upon a contract can be commenced only within six years after the cause of action shall have accrued). However, if a party claims that a contracting party's actions constituted fraudulent concealment, the cause of action is tolled under SDCL 15–2–3. The statute provides that "[i]n an action for relief on the ground of fraud the cause of action shall not be deemed to have accrued until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud." SDCL 15–2–3.

[¶ 27.] In *In re State Sales Tax Liab. of Simpson,* 500 N.W.2d 624, 625 (S.D.1993), an attorney had fraudulently failed to remit sales tax to the state. The defendant claimed that the action was barred by the statute of limitations under SDCL 15–2–3. *Id.* at 627. This Court, upon applying the facts to the statute, held the State did not "discover, or have actual or constructive notice of [the] fraud." *Id.* Because the State instituted the cause of action within six years after it discovered the attorney's fraud, the action was not barred. *Id.*

[¶ 28.] In *Conway v. Conway,* 487 N.W.2d 21 (S.D.1992), a sister brought an equitable accounting action against her brother to recover her fair share of rent from property in which each had obtained an executory interest. *Id.* at 22. The trial court was faced with whether or not the six-year statute of limitations was tolled due to the fraudulent concealment by the brother. *Id.* at 23. We found that because brother had a duty to disclose the receiving of rental income from the property and he chose to remain silent, his silence constituted fraudulent concealment and tolled the statute of limitations. *Id.* at 24.

[¶ 29.] Based upon our above holdings, the trial court did not err in finding that the statute of limitations is tolled based upon Kathleen's silence which amounted to concealment of the contract provision dealing with the life insurance policy proceeds.

[¶ 30.] **4. Whether the trial court erred in refusing to permit a jury trial upon the request of Kathleen.**

[¶ 31.] We have often considered whether a party to a civil action is entitled to a jury trial. Our general rule has been that under Article VI, § 6 of the South Dakota Constitution and SDCL 15–6–38(a), (b), the right to a jury trial is guaranteed to both litigants. *Nizielski v. Tvinnereim,* 453 N.W.2d 831, 832–33 (S.D. 1990). The right to a jury trial does not exist in all civil cases. *Id.* at 833. It is the well-settled rule of this Court that "[i]n cases where the pleadings seek equitable relief ..., a jury trial is a matter for the trial court's discretion." *Id.* (citing *Sko-*

*glund v. Staab,* 312 N.W.2d 29 (S.D.1981) (citations omitted)). "Conversely, when the action is at law, either party has a right to a jury trial." *Id.* (citing *Rosebud Sioux Tribe v. Strain,* 432 N.W.2d 259 (S.D.1988); *Thomas v. Mettel,* 41 S.D. 322, 168 N.W. 651, 652 (1918)). In determining whether the action arises at law or equity, we must "look to the pleadings, including the complaint, answer, cross-complaint and prayer for relief." *Id.* (citing *Arlt v. Langley,* 56 S.D. 79, 227 N.W. 469, 473 (1929)).

[¶ 32.] The granting or denying of a jury trial is within the broad judicial discretion of the trial court and will not be disturbed absent a clear showing of abuse of discretion. *See, e.g., Hanson v. Williams County,* 452 N.W.2d 313, 314 (N.D.1990) (noting that the " 'denial of the motion must be sustained on appeal unless it is shown that the trial court abused its discretion.' "). We have previously noted that under this standard " 'not only must error be demonstrated, but it must also be shown to be prejudicial error.' " *Schmidt v. Royer,* 1998 SD 5, ¶ 9, 574 N.W.2d 618, 621 (quoting *State ex rel. Dep't of Transp. v. Spiry,* 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263 (1996) (quoting *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 258 (S.D.1976))). " 'The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion.' " *Id.* (quoting *State v. Goodroad,* 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129 (citing *State v. Rufener,* 392 N.W.2d 424, 426 (S.D.1986))).

[¶ 33.] In determining whether Shanna's cause of action is in equity or at law, we must look to the pleadings to determine what relief is sought. *See Nizielski,* 453 N.W.2d at 833. The trial court, in denying Kathleen's motion, held a jury trial was not required because the case involved enforcement of a court obligation that the party voluntarily entered into. The case involved interpretation of a divorce stipulation and agreement provision and, like a divorce action, is an equitable

action properly triable before the court sitting without a jury. The trial judge emphasized during the motion for jury trial that a jury should not be allowed to render a verdict which will undo a court order from an equity case.

[¶ 34.] In reviewing the record, Shanna brought an action against Kathleen to recover the $100,000 in insurance proceeds that Kathleen had concealed from her. The trial court was faced with the issue of interpreting a divorce stipulation provision to determine if Shanna had an equitable right to the proceeds that Kathleen had accepted. Kathleen contends that Shanna is seeking damages and, as such, is an action at law entitling her to a jury trial.

[¶ 35.] In the present case, we are faced with the issue of interpreting a divorce stipulation provision flowing from a divorce action. A divorce action is equitable in nature. *See Hisgen,* 1996 SD 122, 554 N.W.2d 494; *Lemer,* 306 N.W.2d 244; *Jacoby,* 69 S.D. 432, 11 N.W.2d 135. *See also Gunn v. Gunn,* 505 N.W.2d 772, 775 (S.D.1993) (noting that a divorce court is a court of equity). Shanna was not seeking damages, but was seeking a determination that she was entitled to the insurance proceeds and order Kathleen to pay them over to her. Since Shanna's action involves the interpretation of the divorce decree, it is equitable in nature; as such, the trial court did not abuse its discretion in denying Kathleen's motion for jury trial.

[¶ 36.] **5. Whether the trial court erred in failing to find that Kathleen, as the natural guardian and conservator of Shanna during her minority, was entitled to a setoff against such proceeds for amounts expended on Shanna's behalf for her care and welfare.**

[¶ 37.] With respect to a parent's obligation to provide for the care and welfare of their child, SDCL 25-5-18.1 provides:

The parents of any child are under a legal duty to support their child in accordance with the provisions of § 25-7-6.1, until the child attains the age of eighteen, or until the child attains the age of nineteen if he is a full-time student in a secondary school.

*See also Matter of Loomis,* 1998 SD 113, ¶ 35, 587 N.W.2d 427, 433 (Konenkamp, J., dissenting) (noting that a parent has a legal duty to support child until at least age eighteen) (citing SDCL 25-5-18.1); *O'Grady v. O'Grady,* 1998 SD 89, ¶ 13, 582 N.W.2d 707, 710 (stating that "[t]he court may not impose ... a duty [on the father] to support his child beyond the age of eighteen, or nineteen if they are still in high school)" (citing SDCL 25-5-18.1; *Birchfield v. Birchfield,* 417 N.W.2d 891, 895 (S.D.1988)). A parent's support obligation continues beyond divorce of the parents through the implementation of child support payments. *See Metropolitan Life Ins. Co. v. Woodham,* 1995 WL 429259, *7 (E.D.Mich.1995) (stating that "[t]he obligation to support minor children following a divorce decree extends to both parents. 'Divorce does not eliminate the continuing duty of parents to support their children during minority' ").

[¶ 38.] Whether a child support obligation survives the death of the payor parent and makes his/her estate liable for the payments is a question of first impression. A review of case law from other jurisdictions shows a split of authority. *See, e.g., Abrego v. Abrego,* 812 P.2d 806, 811-12 (Okla.1991) (identifying the majority and minority views); *Edelman v. Edelman,* 65 Wyo. 271, 199 P.2d 840, 844 (Wyo. 1948) (noting that "it is generally held that such an obligation does not terminate upon the death of the father, in cases where he dies before the child arrives at its majority, but survives his death"); Susan L. Thomas, J.D., *Death of Obligor Parent as Affecting Decree for Support of Child,* 14 A.L.R.5th 557 (1993) (addressing both theories and case examples). Irregardless of the labeling, we find the theory that a child

support obligation survives the death of the payor parent should prevail. In *Spencer v. Spencer,* 165 Neb. 675, 87 N.W.2d 212, 220 (1957), the Nebraska Supreme Court poignantly stated that "[t]he general rule is that such an obligation does not terminate upon the death of the father in cases where he dies before the child arrives at his majority, but survives his death." *Id.* In addition, in *Edelman,* 199 P.2d at 844-45, the Wyoming Supreme Court noted that,

'under modern conditions, the weight of the adjudicated authorities is to the effect that the liability of the father is not necessarily terminated by his death, but may survive against his estate as to subsequently accruing installments. There is no sound reason why the estate of the father should not be charged with the obligation to provide support for his minor children after his death. Thus, it has been held that where an obligation is assumed by a father in connection with a divorce to contribute a certain amount per month toward the support of his child, the payment to continue during its minority, but to cease upon its earlier death, such obligation is binding on his estate. Likewise, a provision in a decree of divorce against a husband for the payment of a certain sum monthly, until the further order of the court, for the support of his infant child creates an obligation which is not discharged by his death.'

*Id.* (quotation omitted).

[¶ 39.] In many states, including South Dakota, attorneys often include provisions in the divorce stipulation and agreement to require the payor spouse to carry a life insurance policy as security for child support payments in case the payor spouse dies during the minority of the child. *See* Arnold H. Rutkin, *Family Law and Practice* § 45.02[2] (1998); Alexander Lindey & Louis I. Parley, *Lindey on Separation Agreements and Antenuptial Contracts* § 26.11, 26.18, and 26.50-.53 (1999). *See also Raynor v. Raynor,* 319 N.J.Super.

591, 726 A.2d 280, 288 (1999) (noting that insurance provision was to provide security for children's support); *Woodham*, 1995 WL 429259, *7 (stating that a life insurance provision in divorce judgment was intended to provide for son in event father died before child reached majority); *Evans*, 559 N.W.2d at 246 (noting that the purpose of father's proposal to name children as beneficiaries was to insure that they would have enough money for their needs should father die before children are raised); *Lockwood v. Lockwood*, 205 Neb. 818, 290 N.W.2d 636, 642 (1980) (noting that "it would have been proper for the court to require him to maintain the insurance policies or even take out additional insurance to insure the payment of child support in the event of his death"); *Donovan v. Donovan*, 25 Wash.App. 691, 612 P.2d 387, 391 (1980) (modifying the court-ordered insurance policy coverage, which named insured's children as beneficiaries, to provide "the life insurance policy on husband's life is a security instrument which ... guarantees the support payments").

[¶ 40.] In the present case, paragraph VII of the divorce stipulation provided that Jerald would pay Kathleen $250 per month for support of their children. Paragraph IX provided that Jerald agreed "to name his minor children as beneficiary of his $100,000 life insurance policy." While the agreement does not expressly dictate that the insurance was meant to replace the child support payments should the father die prematurely during the children's minority, it logically seems that paragraph IX of the agreement was intended to represent a guarantee or security for support of the children should Jerald die during their minority.

[¶ 41.] Based upon the survival of Jerald's child support obligation beyond his death, we hold that Kathleen is equitably entitled to go forward with her claim of "setoff" from Shanna's recovery herein with respect to the child support obligation. Under the divorce decree, Jerald was legally obligated to pay Kathleen $250 per month for the support of the children. That is the maximum amount that Kathleen is legally entitled to recover for child support in this case. We reverse and remand this issue to the trial court to determine what amount of money Kathleen is legally entitled to receive for child support from the time of Jerald's death to the time that Shanna reached the age of her majority. Whatever amount the trial court determines represents the support owed is to be deducted from Shanna's $50,000 share of Jerald's life insurance policy.

[¶ 42.] **6. Whether the trial court erred in refusing to grant Kathleen's motion to amend her answer and discovery responsive pleadings to conform with the evidence that she never received proceeds from Allied Life Insurance Company.**

[¶ 43.] It is the well-settled principle of this Court that "[t]o preserve issues for appellate review litigants must make known to trial courts the actions they seek to achieve or object to the actions of the court, giving their reasons." *State v. Nelson*, 1998 SD 124, ¶ 7, 587 N.W.2d 439, 443. Any issue not advanced at the trial level cannot be raised for the first time on appeal. *Id.* (citing *State v. Henjum*, 1996 SD 7, ¶ 13, 542 N.W.2d 760, 763 (citations omitted)). In the present case, Kathleen's counsel made the motion to amend, but by the conclusion of trial never sought the court to make a ruling on the motion. This Court has "consistently adhered to the principle that a complaining party must give the trial court an opportunity to consider claimed irregularities and rule on them." *Dussart v. Dussart*, 1996 SD 41, ¶ 6, 546 N.W.2d 109, 111. We have often stated:

> 'If the trial court fails to decide or rule on a motion, nothing is presented for review in the appellate court. The burden of demanding a ruling rests upon the party desiring it. If a party permits the court to proceed to judgment with-

out action upon his motion or objection, he will be held to have waived the right to have the motion or objection acted upon.'

*State v. Svihl,* 490 N.W.2d 269, 273 (S.D. 1992) (quoting *State v. Sickler,* 334 N.W.2d 677, 679 (S.D.1983) (citation omitted)). The trial court never ruled on the motion to amend and Kathleen failed to have the court rule on the motion; therefore, this issue is deemed waived and is without merit.

[¶ 44.] We affirm in part, reverse and remand in part.

[¶ 45.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

[¶ 46.] SABERS and KONENKAMP, Justices, concur in part and dissent in part.

[¶ 47.] SABERS, Justice, had deemed himself disqualified, and all parties and counsel waived said disqualification.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 48.] I concur on Issues 1, 2, 3 and 5. I dissent on Issues 4 and 6.

[¶ 49.] I would reverse and remand to permit the amendment of Mother's answers to interrogatories and to require a jury trial, including the claim for setoff.

[¶ 50.] I dissent on Issue 4 because the trial court erred in denying a jury trial.

[¶ 51.] **4. The trial court erred in denying a jury trial.**

[¶ 52.] The trial court erred in denying a jury trial because this claim is in essence a claim for money damages. Under the constitution, any person has a right to a jury trial on claims for money damages. This absolute right to a jury trial on money damage claims applies to both the plaintiff and the defendant. SD Const. art. VI, § 6; SDCL 15–6–38(a), (b); *Knowles v. United States,* 1996 SD 10, ¶¶ 9–10, 544 N.W.2d 183, 186–87; *Haberer v. Rice,* 476

N.W.2d 276, 277 (S.D.1991) (quoting *Rosebud Sioux Tribe v. Strain,* 432 N.W.2d 259, 264 (S.D.1988)); *First Western Bank, Sturgis v. Livestock Yards Co.,* 466 N.W.2d 853, 856–57 (S.D.1991); *Nizielski v. Tvinnereim,* 453 N.W.2d 831, 832–33 (S.D.1990). We have previously stated: "In cases where the pleadings seek equitable relief or where the legal relief is incidental, a jury trial is a matter for the trial court's discretion. Conversely, when the action is at law, either party has a right to a jury trial." *First Western Bank,* 466 N.W.2d at 856 (quoting *Nizielski,* 453 N.W.2d at 832–33) (citation omitted). Mother is seeking legal relief and, thus, is "entitled to a jury trial as a matter of right." *Id.* (citing *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44, 48 (1962)). The trial court wrongfully denied her of this right.

[¶ 53.] I dissent on Issue 6 because the trial court erred in denying Mother's motion to amend her answers to interrogatories.

[¶ 54.] **6. The trial court erred in denying mother's motion to amend.**

[¶ 55.] The trial court erred in refusing to permit mother to amend her answers to interrogatories because, in the absence of prejudice, amendments are to be granted liberally in all cases, in order to promote trials on the merits. SDCL 15–6–15(a); *Noble v. Shaver,* 1998 SD 102, ¶ 17, 583 N.W.2d 643, 647 (citing *Jordan v. Duprel,* 303 N.W.2d 796 (S.D.1981)). There is no showing of any prejudice in this case.

[¶ 56.] Therefore, I would reverse and remand to permit the amendment of Mother's answers to interrogatories and to require a jury trial, including the claim for setoff.

[¶ 57.] KONENKAMP, Justice, joins this special writing.